# Painter *versus* The Mayor, Aldermen, and Citizens of Pittsburgh.

*Liability of municipal corporation for negligence of contractor employed by it.— The principle of* respondeat superior *discussed.*

A municipal corporation is not responsible for an injury occasioned by the negligence of contractors with it, or of their agents and servants; the remedy for the injury is against the contractors alone.

ERROR to the District Court of *Allegheny county.*

This was an action on the case by Nancy Jane Painter against The Mayor, Aldermen, and Citizens of Pittsburgh, to recover damages for causing the death of her husband by negligently leaving a sewer on Duquesne Way, in said city, open and unpro-

[Painter *v.* The Mayor, &c., of Pittsburgh.]

tected by proper barricades, &c., which the city of Pittsburgh was having constructed, from Liberty street to the Allegheny river. The defendants, as matter of defence, alleged that the city was not constructing said sewer through the regular officers of the city, but under a contract with Allen & Kerr, and that the city were the mere agents of the property-holders, who, by virtue of the Act of Assembly, would have to pay for said sewer, under assessment, and being such agents, and having the work done by contract, they were not liable in law for any injuries resulting from negligence of the contractors, their workmen and employees.

The evidence showed that George Painter, the husband of plaintiff, on the night of the 28th day of June 1859, was going up Duquesne Way towards Irwin street, to his boarding-house, at Frank Morrow's, and while passing along, fell into the sewer, some twenty feet deep, and received injuries which caused his death in some eight or ten days afterwards.

The defendants requested the court to instruct the jury:—

1. That if the excavation into which the plaintiff fell, was made by a contractor for said work, in accordance with the Act of Assembly, and ordinances of the city of Pittsburgh, and not by the regular officers of said city, such contractor is not an agent of said city, for whose negligence, or the negligence of whose workmen, the city would be liable.

2. That if the excavation was made in the construction of a public work, the cost of which was to be assessed in pursuance of an Act of Assembly authorizing the same, upon the property benefited, the city authorities were the agents of the parties interested, and being public agents, are not liable for the negligence of the contractor or his employees.

3. That negligence upon the part of the defendants cannot be inferred from the fact of injuring, but must be proved by plaintiff; and if the jury believed that the defendants or their agents did everything to prevent accident, which a person of ordinary care could do, the defendants are not liable in this case.

4. That if they believed that any barricades, embankments, or other obstructions existed on the line of said excavation, sufficient to put a person of ordinary care upon his guard, and that under the circumstances of the case, the deceased did not exercise the care which a person of ordinary caution would have done, the plaintiff is not entitled to recover.

5. That the evidence in the case, if true, does not bring the plaintiff within the statutes of the state, and there being no liability at common law for negligence producing death, the plaintiff is not entitled to recover.

6. That the plaintiff is not entitled to recover, because the writ and declaration in the case do not set forth a cause of action

[Painter *v.* The Mayor, &c., of Pittsburgh.]

under the statutes of the state, and there would be no cause of action at common law.

The court, in charging the jury, affirmed the third and fourth points submitted by defendants, and reserved the questions of law arising under the others, ruling *pro forma* in favour of the plaintiff. The jury rendered a verdict in favour of the plaintiff for $2100.

The questions reserved were—

1. Whether the city was liable in this action, where the excavation into which deceased fell, was done by contract, under the Act of Assembly and ordinances of the city, and not by the regular officers of the city.

2. Whether the city would be liable for the negligence of the contractors and their employees, where the excavation into which deceased fell, was made in the construction of a public work, the cost of which was to be assessed in pursuance of an Act of Assembly authorizing the same, upon the property benefited, the city authorities being the agents of the parties interested, and public agents.

3. Whether the writ and declaration set forth such a cause of action, as would entitle plaintiff to recover under the statutes of the state.

4. Whether the plaintiff, under all the evidence, if true, is within the statutes of the state, and whether she can recover, there being no liability at common law for negligence producing death.

The court, after argument in banc, ruled these reserved questions in favour of defendants, and entered judgment for the corporation, *non obstante veredicto;* which was the error assigned by the plaintiff.

*Hamilton & Acheson*, for plaintiff, argued that the only way in which a municipal corporation can perform its functions, in respect to its streets and other highways, is through the intervention of agents. Whatever responsibilities it may incur, whether arising from contracts, or the violation of its charter, or the general law, must be incurred through the instrumentality of agents, or not at all. "A corporation is liable for the wrongful acts, and neglects of its servants and agents, done in the course and within the scope of their regular employment, upon the same ground, in the same manner, and to the same extent that natural persons are:" Angell & Ames, § 10, and the authorities therein referred to.

The principal is liable in a civil suit to third persons, for the frauds, deceits, concealments, misrepresentations, torts, negligence, and other misfeasances and omissions of duty by his agents, in the course of their employment, although the principal did not authorize, or justify, or participate in, or indeed know

[Painter *v.* The Mayor, &c., of Pittsburgh.]

of such misconduct, or even if he forbade them or disapproved of them: Story on Agency, § 452; Paley on Agency 294, 305; 2 Kent's Com. 633; Smith on Master and Servant 152; Law Library, vol. 75.

The contract with Allen & Kerr for the construction of the sewer, did not release the city from keeping the street in such order as not to endanger others, or prevent the city authorities from putting proper guards and hindrances around the excavation, so as to insure the safety of the public. The liability for negligence and misfeasance of third parties does not always depend on the relation of master and servant. A party for whose benefit work has been negligently done, is answerable for the consequences: Bush *v.* Steinman, 1 Bos. & Pul. 403; Randelson *v.* Murray, 8 A. & E. 109; Stone *v.* Cartwright, 6 Term Rep. 411; Mayor, &c., of the City of New York *v.* Bailey, 2 Denio 433.

*White & Slagle,* for defendants.—1. The first reserved question was the one expressly decided by the District Court, and is the one discussed in the printed argument of plaintiff in error.

The general doctrine of the liability of a principal for the negligence of his agents, and of a master for the negligence of his servants, is not denied. And it is admitted that a corporation stands on the same footing in this respect as an individual.

But as Allen & Kerr were contractors, doing the work under a written contract, employing and paying their own workmen, over whom the city had no control whatever, these contractors and workmen are not the agents or servants of the corporation, for whose negligence the city is liable. The maxim of *respondeat superior* does not apply to this case.

The plaintiff in error relies upon Bush *v.* Steinman, and the cases which have followed its lead. But that decision has long since been overruled, and the late authorities have firmly settled the law otherwise in England: Quarman *v.* Burnett, 6 M. & W. 499; Rapson *v.* Cubitt, 9 Id. 710; Milligan *v.* Wedge, 12 A. & E. 737; Allen *v.* Hayward, 7 Q. B. 960; Reedie *v.* London and N. W. Railway Co., 4 Exch. 244; Knight *v.* Fox, 1 Eng. Law and Eq. 477; Overton *v.* Freeman, 8 Id. 479; Peachey *v.* Rowland, 16 Id. 442; Sadler *v.* Henlock, 30 Id. 167; Steel *v.* N. E. Railway Co., 32 Id. 366; Scott *v.* Mayor, &c., of Manchester, 37 Id. 495, and same case in 38 Id. 477.

The principle as announced in Bush *v.* Steinman was never fully recognised in England. It was elaborately discussed in Laugher *v.* Pointer, 5 B. & C. 547, when the court was equally divided. In Quarman *v.* Burnett, 6 M. & W. 499, it was again elaborately discussed, and decided adversely to Bush *v.* Steinman. Quarman *v.* Burnett was followed by Rapson *v.* Cubitt, Overton

v. Freeman, and the other authorities above cited, until the law of England is now firmly settled, that, in a case like this, the plaintiff cannot recover.

In this country, the earlier decisions followed in the wake of Bush v. Steinman, although that case was never recognised to its full extent by our courts.    In Massachusetts, it was cited in Stone v. Codman, 15 Pick. 297, and in Earle v. Hall, 2 Met. 353. It was also cited in some of the earlier decisions of New York, and is referred to in Mayor, &c., of New York v. Bailey, 2 Denio 433, and in Delmonico v. Mayor, &c., of New York, 1 Sandf. 223. But the late decisions in both those states have discarded the doctrine and settled the law as it is now recognised in England. In Massachusetts, Hilliard v. Richardson, 3 Gray 349, is the latest decision.    The court in that case reviews the principal decisions in that state and in the other states of the Union, and, in a very able opinion, declares that Bush v. Steinman cannot be sustained on reason or authority.    Blake v. Ferris, 1 Selden 48, is the leading case in New York, and was followed by Pack v. The Mayor, Aldermen, &c., of New York, 4 Id. 222, decided in 1853, and by Kelly v. The Mayor, &c., of New York, 1 Kernan 432, decided in 1854.    These last two cases are directly in point. They hold that the city corporation is not liable for the negligence of a contractor or his workmen, although the work may be done under a contract which requires it to be done under the direction and to the satisfaction of the city authorities.    The same point has been also expressly ruled in Mississippi : Barry v. St. Louis, 17 Miss. 121.

The doctrine of Bush v. Steinman has been denied, and the later English authorities followed, in other states : Samyn v. McCloskey, 2 Ohio 536 ; Carman v. S. and I. Railroad Co., 4 Id. 399 ; De Forest v. Wright, 2 Mich. 368 ; Hughes v. Boyer, 9 Watts 556 ; Bard v. Yohn, 2 Casey 482 ; Borough of West Chester v. Apple, 11 Id. 284 ; Blattenberger v. Little Schuylkill Navigation Co., 2 Miles 309.

But it may be contended that municipal corporations should be held to a greater degree of liability.    The cases above referred to, Scott v. The Mayor, &c., of Manchester, Pack v. The Mayor, &c., of New York, Kelly v. The Mayor, &c., of New York, and Barry v. St. Louis, were all municipal corporations, and are directly in point.

Other cases which seem to conflict with the principle of these late decisions, really do not, when closely examined.    In Batty v. Duxbury, 24 Verm. 155, Currier v. Lowell, 16 Pick. 170, and Erie City v. Swingle, 10 Harris 384, the municipal corporations were held liable for injuries resulting from deep cuts, or obstructions in the streets, made by railroad companies.    But in these cases, their liability rested on a different and well-known

principle.  See also Greer *v.* City of Pittsburgh, 10 Harris 54;
Bailey *v.* The Mayor, &c., of New York, 2 Denio 433; Delmonico
*v.* The Mayor, &c., of New York, 1 Sandf. 223; Buffalo *v.* Hal-
loway, 3 Seld. 493.

On the general doctrine here advocated, we refer to Story on
Agency, §§ 453, 454; Pierce on American Railroad Law, pp.
235–242; and to Hilliard on Torts, vol. 2, §§ 533–551, and the
authorities there cited.

But it is contended that the defendants here are liable, because
the contract with Allen & Kerr did not release the city from
keeping the street in such order as not to endanger others, &c.
But was it the duty of the city to put up barriers, &c., in this
case?  It will not do to rest her liability on the general duty of
keeping the streets in repair, for that broad principle would
make the city liable for every accident occasioned by the neglect
of every owner and contractor in the city who leaves a cellar
foundation unguarded or a cellar-door open.  This point is ex-
pressly decided in Borough of West Chester *v.* Apple, 11 Casey
284.  We do not contend that the city can get clear of all re-
sponsibility, by making contracts and shuffling off her responsi-
bility on to the contractors.  What are properly and legitimately
municipal duties, such as repairing streets, &c., she may not thus
shuffle off on to irresponsible parties, but the building of a sewer
is no part of her municipal duties.  She is not compelled to
build them.  She is authorized to do so, but it is a matter outside
of her regular municipal duties: Carr *v.* Northern Liberties, 11
Casey 324.  In reference to such matters, we contend, she stands
precisely on the footing of an individual, and incurs no greater
liability.  The contractor alone is liable.

2.  The city, as a municipal corporation, was not building this
sewer.  It was not done in the discharge of her regular munici-
pal duties.  It was not a public improvement for the benefit of
all the citizens.  It was for the benefit of only a few.  Its con-
struction, very properly, was intrusted to the city authorities, as
all such improvements should be.  But they were merely the
agents of the property-holders interested in it.

The contractors engaged to do the whole work and find all
materials, to make the excavation, build the drain, fill up the
street, and haul away the surplus earth.  It was their duty to
do it skilfully and properly, so as to injure no one; and if bar-
riers were necessary to protect the public from the ditch, while
they were working, it was their duty to put them up and keep
them there: Borough of West Chester *v.* Apple, *supra.*  The
city had no control over the contractor or his workmen.  If the
city authorities had interfered with the work, the contractors
might have held the city liable to damages.  If the contractors

[Painter v. The Mayor, &c., of Pittsburgh.]

had left the street after the work was done, in an unsafe condition, whereby the plaintiff had been injured, and the city had neglected to repair it, after notice of the defect, the city possibly would have been liable, but liable on the principle of a continuing nuisance—a very different case from the one at bar.

3. The action does not lie at common law, and can be sustained only by virtue of our special statutes. They are to be strictly pursued. The Act of 15th of April 1851 gave an action, in case of death, first to the widow, and if no widow, then to the personal representatives. The Act of 26th of April 1855 provided that the damages should go to the widow and children in the proportion they would take under the intestate laws; that the declaration should state who are the parties entitled to such action; and that the action should be brought within one year after the death, and not thereafter.

The accident happened in the middle of June 1859, and the death occurred 28th day of June 1859. The writ was issued December 14th 1859, in the name of "Nancy Jane Painter, administratrix of all and singular the goods and chattels, rights, and credits of George Painter, deceased, v. The Mayor, Aldermen, &c., of the City of Pittsburgh."

It was served on the mayor on the 16th of December 1859. But no narr. was filed, and nothing further done in the case, until 27th of October 1860, when plaintiff's attorneys moved to amend the writ and record, by striking out " administratrix, &c. ;" and then filed their narr.

The amendment was not made until more than a year had elapsed after the death. The action, as it stood in court up to that time, was an ordinary action of assumpsit, by the administratrix of the deceased. The amendment was virtually a new action, and being more than a year after the death, was too late, under the statute. The statutes authorizing amendments in the names of parties, apply only to cases where there were mistakes of fact. Here there was a mistake of law. The suit as brought could not be maintained. There was no cause of action in court until after the amendment. Such amendments were never contemplated, and are not authorized, by our statutes.

The declaration is that defendants " negligently and carelessly did suffer and permit a sewer or opening to be and remain open upon a public street and highway known as St. Clair street, whereby the said George Painter was greatly injured, &c."

The negligence here charged was very different from the kind of negligence proved at the trial. The actual negligence was not permitting the sewer to remain open, but not erecting barricades while the sewer was being built. Under the declaration, with such evidence, the plaintiff was not entitled to a verdict.

[Painter *v.* The Mayor, &c., of Pittsburgh.]

The opinion of the court was delivered by

STRONG, J.—The case was put to the jury to find whether the injury which resulted in the death of the plaintiff's husband was or was not occasioned by the negligence of the defendants' contractors, or that of the contractors' agents and servants, and the verdict *establishes that it was.* To this mode of submitting the case no exception was taken, and nothing is therefore presented to us but the questions reserved. Of these, it is necessary to consider only one, which is, whether a corporation is responsible for an injury occasioned by the negligence of contractors with it, or of their agents and servants.

By an Act of Assembly of April 22d 1858, the Select and Common Councils of the city of Pittsburgh were authorized, whenever they should deem it necessary, to cause sewers to be constructed in any street of the city, and for the payment of the cost, levy an assessment upon the property benefited. In pursuance of the act an ordinance was passed on the 25th of October 1858, providing for the construction of a sewer in St. Clair street, and on the 1st of June 1859, a written contract for its construction was entered into with Allen & Kerr, contractors, by which they covenanted to build or construct a brick sewer with all necessary inlets, and to furnish all the material therefor, for stipulated prices for the excavation, replacing over the sewer, removing surplus material, repaving, for brick and stone work, and for iron; and they agreed that the material, workmanship, and excavation should be satisfactory to the recording regulator. They began the work soon after, excavated the earth to the depth of twenty feet in some places, directed barriers to be placed across the ends and along the sides of the trench, and employed a man to take care that the barriers should be at all times kept up. Notwithstanding this, however, the husband of the plaintiff fell into the excavation on the night of the 28th of June, 1859, and received hurts which caused his death. The verdict of the jury determines that the injury was not a consequence in whole or in part of his negligence, but was caused entirely by the negligence of the contractors, or of their agents or servants. Is the city liable? We think not. The wrong was not done by any servants of the defendants. There is no room for the application of the principle "*respondeat superior.*" The defendants had no control over the men employed by the contractors, or over the contractors themselves. They could not dismiss them or direct their work. The excavation was not illegal, and there was a superior to the workmen, to wit, the contractors. There cannot be more than one superior, legally responsible. Undoubtedly there has been much confusion, and some conflict of decision on this subject, growing out of the early case of Bush *v.* Steinman, 1 Bos. &

[Painter v. The Mayor, &c., of Pittsburgh.]

Pul. 404; but that case long since ceased to be regarded as a correct enunciation of the law in England, and both its reasoning and authority are denied. It is now settled in that country that defendants, not personally interfering or giving directions respecting the progress of a work, but contracting with a third person to do it, are not responsible for a wrongful act done, or negligence in the performance of the contract, if the act agreed to be done is legal. Such is the doctrine of Rapson v. Cubitt, 9 M. & W. 710; Readle v. The London and North Eastern Railroad Co., 4 Exch. 243; Overton v. Freeman, 8 Eng. Law and Eq. 479; Peachey v. Rowland, 16 Eng. Law and Eq. 442; and numerous other English cases. In Gray and Wife v. Hubble & Pullen, decided in the Queen's Bench, April 16th 1863 (Law Journal Reports, vol. 32, part 8, N. S.), Chief Justice Cockburn asserts it to be the common doctrine, that "if a person in the exercise of his rights as a private individual, or of those conferred upon him by statute, employs a contractor to do work, and the latter is guilty of negligence in doing it, the contractor, and not the employer, is liable. Similar opinions were expressed by all the judges.

Such, also, we understand to be the doctrine in this country, sustained by a decided preponderance of authorities. It would answer no good purpose to review the cases at length. The English ones, and many of the American, are reviewed and commented upon in Hilliard v. Richardson, 3 Gray 349, in Barry v. The City of St. Louis, 17 Missouri 121, and Blake v. Ferris, 1 Selden 48. The general principle to be extracted from them is, that a person either natural or artificial is not liable for the acts or negligence of another, unless the relation of master and servant or principal and agent exist between them; that when an injury is done by a party exercising an independent employment, the party employing him is not responsible to the person injured. And the rule applies with full force to municipal corporations. In Blake v. Ferris, it was held by the New York Court of Appeals that the defendants, who had a license from the city to construct at their own expense, a sewer in a public street, and who had engaged another person by contract to construct the whole work at a stipulated price, were not liable to third persons for any injury resulting from the negligent manner in which the sewer had been left over night by the workmen engaged in its construction. It was declared that the immediate employer of the agent or servant through whose negligence an injury occurs, is alone responsible for the negligence of such agent or servant; that the principle of *respondeat superior* applies to him alone, and that there cannot be two superiors severally responsible, in such a case. Blake v. Ferris was followed by Pack v. The Mayor, &c., of New York, 4 Selden 222, in which the same

court held the city corporation not liable to third persons for injuries caused by the negligence of workmen employed in grading a street under the direction of a person who had entered into a contract with the corporation to do the work for a specified sum. The liability was declared to be·upon the contractor alone, and the court denied that he was the servant or agent of the corporation. It was further ruled that a clause in the contract by which the contractor engaged. to conform the work to such further directions as might be given by the street commissioner, did not affect the case; that it only gave the corporation power to direct as to the *results* of the work, without any control over the *manner* of performing it, which control alone furnishes a ground for holding the master or principal liable for the act of a servant or agent. Kelly *v.* The Mayor, &c., of New York, 1 Kernan 432, is another case in which the same rule was applied. Barry *v.* The City of St. Louis, 17 Missouri 121, is another well-considered case, affirming fully the doctrine. The corporation had contracted with one Brooks for the construction of a street sewer. The contractor was, for an agreed sum, to furnish all the materials, and do all the work including excavation. The contract reserved the right for the city engineer to inspect the work as it progressed, and watch its execution. During its progress a deep trench was dug, into which the plaintiff fell at night, and was injured, in consequence of a failure to erect barriers, and set up lights. The case was very like the present. Yet it was held the corporation was not liable, and the general principle was laid down, after quite a full review of the English and American authorities, that municipal corporations are not liable for damages occasioned by the negligence of contractors.

It is conceded there are a few cases that intimate, if they do not declare a different doctrine, but they are not the more modern and best considered. During the argument much reliance was placed by the plaintiff in error upon City of Chicago *v.* Robbins, Am. L. Reg. July 1863, p. 529, which was a suit by the city to recover from Robbins what the corporation had been compelled to pay to a person injured by falling into an excavation in one of the side-walks. The defendant was the owner of a lot, and he had contracted with one Britton for the erection of a house thereon, including an excavation of the side-walk adjoining, for the purposes of light and air for the basement. By the contract, he had a right to supervise the work, a right which he exercised. He knew of the dangerous condition in which the excavation was left, his attention was frequently called to it, and he promised to attend to it. Nothing, however, was done, and he was held liable, apparently, for his own negligence. It is true some expressions of the court appear to recognise a distinc-

[Painter *v.* The Mayor, &c., of Pittsburgh.]

tion between the liabilities of the owners of real estate, or fixed properly, as it is called, for injuries resulting from nuisances on such property, no matter by whom erected or maintained, and liabilities of owners of other property, for the negligence of their contractors. This distinction, however, has been exploded in England, where it originated, and it can be supported by no sound reason: Milligan *v.* Wedge, 12 A. & E. 737; Allen *v.* Hayward, 7 Id. N. S. 960; Reedie *v.* Railroad Company, 4 Exch. 244.

It is difficult to discover any substantial reason or good policy for holding the present defendants responsible to the plaintiff. The negligence complained of was not theirs. It does not appear that they knew of it. The verdict determines that the fault was all that of the contractors. Over them the defendants had no more control than the plaintiff's husband had. They were not in a subordinate relation to the defendants, neither servants nor agents. They were in an independent employment. And sound policy demands that in such a case the contractor alone should be held liable. In making a sewer he has, necessarily, the temporary occupancy of the street in which the work is done, and it must be exclusive. His servants and agents are upon the ground, and he can more conveniently and certainly protect the public against injury from the work than can the officers of the municipal corporation. The public will be better protected if it be held that the contractor alone is responsible for his negligence, and that the city does not stand between him and any person injured. Thus he will be taught caution, while a sufferer by the negligence of his servants, will not be compelled to resort for compensation to the insolvent servants.

By reason and authority, then, we are led to the conclusion to which the District Court came, that the defendants are not liable for the negligence of Allen & Kerr, their contractors.

The judgment is affirmed.