## Baker v. North East Borough, Appellant.

*Negligence—Boroughs—Constructive notice of obstruction in highway.*

If a water pipe constructed by a borough in a public highway is left for weeks in such condition that water escapes noisily therefrom, in a manner calculated to frighten ordinarily gentle and road-worthy horses, and does so frighten them, such facts are evidence of negligence on the part of the borough, whose duty it is to safely construct such pipe and use due diligence in so maintaining it.

*Contributory negligence—Sudden peril.*

A plaintiff placed in sudden peril by defendant's negligence, is not to be held liable for a mistake of judgment in not using the best possible means of escape.

*Release by husband of damages for wife's services.*

A release of damages by the husband, under the act of June 11, 1879, P. L. 126, in a suit by the wife for injuries, is sufficient to enable her to recover for loss of earning capacity, without any formal transfer to her of the husband's rights.

Argued April 27, 1892. Appeal, No. 397, Jan. T., 1892, by defendant, from judgment of C. P. Erie Co., Feb. T., 1889, No. 153, on verdict for plaintiff, Sarah Baker and A. H. Baker, her husband, in right of wife. Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and HEYDRICK. JJ.

Trespass, in right of wife, plaintiff, for personal injuries through defendant's negligence in constructing and maintaining a water pipe in the highway. A release to claim for damages by the husband was filed.

The evidence, on the trial before GUNNISON, P. J., was to the effect that defendant borough had laid a water pipe along a public road, with a stop-cock to let out the surplus water; and as plaintiff and her husband drove past, the horses took fright at a sudden spurt of the water and ran away, causing the injury.

A witness for plaintiff was allowed to state that he put the pipe in for the borough at the direction of the water committee of councils, under objection that it must be shown by the records of councils. [9, 10]

Plaintiff also gave evidence, under objection, to show that the water, for weeks before the accident, would come from the pipe, that it was calculated to frighten well-broken and road-

worthy horses, and that it did frighten horses a number of times before the accident. [14–18]

Plaintiff's witness was also allowed to state, that the banks were quite high at this point, under objection that the declaration did not allege such condition of the highway. [19]

Plaintiff testified, under objection, that her horse was very gentle. [25]

Plaintiff gave evidence as to the value of her services, under objection that a mere release by the husband did not give her a right to recover for loss of earning power. [11–13]

Defendant gave evidence to show that plaintiff's husband was slightly crippled in one arm and that one of the horses had run away before; and that the stop-cock was properly constructed.

Defendant, on cross-examination of the street superintendent, asked in substance if the witness had not watched this place and visited it frequently to see that it was all right. Objected to as not cross-examination and excluded. [26–28]

A witness was called by plaintiff in rebuttal who testified, under objection that it was not rebuttal, that the stop-cock was out of order. [29]

The court charged the jury in part as follows :

["Now it is the duty of a person or a corporation placing anything in a public highway which is calculated to or may frighten teams, to guard it in such a way as to prevent accidents of that kind from happening.] [30]   [In fact no person and no corporation has any right to place in the highway a thing which is calculated to frighten ordinarily well-broken and quiet animals, without guarding it in such a way.] [31] [And in placing this pipe in the highway as it was placed by the borough of North East, although it may have had no tendency and not have been calculated to frighten well-broken and quiet horses when operated in a proper manner and when in a good state of repair, it is the duty of a person, and was the duty of the defendant in this case in placing that pipe in that highway, to use care in seeing that it was maintained in a proper condition and in a proper state of repair and was operated properly.] [32] . . . .

[" But the plaintiff claims, and it is the theory of the counsel for the plaintiff, that—they having proven as they have, if

you believe the testimony of the numerous witnesses, that the water spurted in the same manner or practically the same manner at numerous times prior to this accident and for several weeks prior thereto, occasionally, although it was not proven that the spurting of the water upon this occasion was caused by the act of the defendant or its employees, yet that it having spurted in this way frequently or occasionally during a number of weeks prior to this time,—you would be justified in finding that they had knowledge or had notice that the water operated in that manner, and, therefore, that they should have repaired the pipes or guarded them in such a way that they would not have operated in that manner.] [33]

["If the defendants knew that the water was operating in that manner and allowed it to remain so, although it did not operate in that manner from their own act or that of their employees, they would be bound to repair it in a reasonable time after they acquired the knowledge, and if they did not repair it they would be liable for all the injury resulting therefrom, and even if they had no knowledge of that fact, if it operated in that manner with sufficient frequency or for a sufficient length of time to charge them with notice, that is, so long that it would have been their duty to discover that it operated in that way, and then they did not repair it within a reasonable time, they would be still liable for an injury that resulted from their negligence in not discovering that it was not in proper repair and putting it in proper repair.] [34]   That is what is called constructive notice.   There are two kinds of notice; actual and constructive.   [If they had been actually notified and failed to repair it, they would be liable.   If it had operated in this manner for so long a time that in the performance of their duty they ought to have discovered it, then the law imposes the same accountability as if they had actually known it, because it was their duty to know it.] [35]

["Now it is for you to say whether or not the water did escape in this manner for a sufficient length of time and frequently enough during any number of weeks prior to the accident to charge the defendants with notice of its condition.] [36] . . . .

"But for the testimony of the plumbers who were called, Mr. Williams and Mr. Purcell, [in my opinion there would be

no case for your consideration ; because there would be no evidence to show that there was any want of repair in this pipe. But these witnesses, Mr. Williams and Mr. Purcell, tell you that if the water did escape in the manner which has been testified to you, the stop-cock must have been out of repair. That it could not happen if it had been properly cared for and in proper condition. Now that is some evidence to show that the stop-cock was out of repair and that it was not properly maintained ; and, that being so, the fact that it was noticed to operate in this manner for several weeks prior to the happening of the accident would be evidence that it was out of repair during the time that the water was observed to escape in that manner, and then comes in the principle that I have already explained to you, that if it was in that condition, and by the exercise of ordinary care the agents of the borough could have discovered its condition, then they are chargeable with notice of it, and are liable for any injury that was received if they did not have it repaired within a reasonable time after they should have discovered it.] [20] . . . .

[ " If you find that the pipe or stop-cock was out of repair for a length of time sufficiently long to charge the defendant with notice of it, then the defendant would be guilty of negligence in not maintaining it in proper condition.] [21] . . . .

[" It is also claimed by the defendant that Mrs. Baker was negligent in grasping the lines when the horses started to run, and in pulling the wrong line (although there is no evidence that she did, that I remember of) ; that in grasping the lines she in that way contributed to the injury by preventing her husband from properly managing the horses.] [22]  [If she had grasped the lines and pulled the wrong line when in the possession of her senses, without anything to frighten her and deprive her of the proper and calm judgment that she would have under ordinary circumstances, and in that way contributed to the injury, it would be contributory negligence which would prevent her recovery.  [But if she was suddenly placed in a position of peril and under the influence of fright, deprived of the calm judgment she would otherwise have had, and grasped the lines with the intention of stopping the horses, even though she made a mistake in her judgment as to what would be the effect of her act, the law does not hold her to the accountability

that it would if she were in other circumstances.] [37] ] [23] These are questions for you. If you find that she was guilty of negligence which contributed in any degree to the happening of the accident then she could not recover.

[ " If you find that the defendant was not negligent, or that Mrs. Baker was guilty of contributory negligence, your verdict would be for the defendant. If on the other hand you find that the defendant was negligent and that Mrs. Baker was not guilty of contributory negligence, the verdict should be for .the plaintiff.] [38] . . . .

[ " If you find for the plaintiff you will find such a sum as will compensate her for her loss of earning power. Under the act of assembly I am of the opinion that that is a proper element of damage in this case."] [24]

Plaintiff's points, affirmed, were as follows, among others:

" 3. Defendant borough had no right under the evidence to so construct and operate its said water pipe at the place in question as to render the highway unsafe for ordinary public travel." [1]

" 4. The undisputed evidence being that there was a large amount of travel upon the highway in question known as the Grahamville or Valley road, that fact would of itself require greater vigilance upon the part of the defendant borough in watching and keeping its water pipe at all times in such condition as not to interfere with or endanger public travel than would be required in case of a highway on which there was only a small amount of public travel." [2]

" 5. The presumption is that Mr. and Mrs. Baker were in the exercise of due care at the time the accident happened, and that the team Mr. Baker was driving was a road-worthy team, unless the contrary is shown by the evidence in the case." [3]

" 6. If the jury find from the evidence that the plaintiff was placed in a position of peril as the result of the defendant's negligence, even if the jury should also find that Mr. Baker and his wife did not use the best possible means to avert dangerous consequences, but used such means as were natural under such circumstances, they will not be held liable for a mere mistake of judgment." [4]

" 2. If the jury find from the evidence that the pipe was properly constructed and arranged and kept in repair, and that

from some extraordinary or unknown cause the water did on the day and at the time of the alleged accident escape in the manner described by the plaintiff's witnesses, scaring the plaintiff's horse or horses and causing them to run away, and that such escape was an event which the defendant borough had no reason to expect and could not be reasonably expected to foresee as likely to take place, then the borough would not be liable to the plaintiff in damages for the alleged injury and the verdict should be for the defendant. *Answer:* The second point is affirmed unless the jury find from the evidence that the water had been escaping at the place and in the manner described by the plaintiff for so long a time or so frequently prior to the time of the accident as to be constructive notice to the defendant of a defect or want of repair in the pipe." [5]

"5. If the jury find from the evidence that the plaintiff, Sarah Baker, caught hold of the left line or both of the lines at the time the horse or horses scared, and that she pulled the line or lines in such a manner as to cause the horses to turn around to the left or contributed to their turning around to the left in such a manner as to overthrow the wagon and throw the plaintiff out and on to the ground, causing the injury complained of, then the plaintiff would be guilty of contributory negligence and cannot recover and the verdict should be for the defendant. *Answer:* The principle stated in the fifth point is correct unless the jury find that the plaintiff, being suddenly placed in a position of great peril, by the negligence of the defendant, was thereby deprived of the power or opportunity of deliberating and of exercising calm judgment in her acts." [6]

"9. There is not sufficient evidence of the negligent use and management of the said pipe and escape valve or stop-cock by the borough or its superintendent to entitle the plaintiff to recover." Refused. [7]

"11. Plaintiff, if entitled to recover, cannot recover any damages for the loss of earning power since the date of the alleged release." Refused. [8]

Verdict for plaintiff for $900 and judgment thereon. Defendant appealed.

*Errors assigned* were (9–19, 25–29) rulings on evidence, quoting bills of exception and evidence; and (1–8, 20–24,

30–38) instructions, quoting points, answers and charge, as above.

*S. M. Brainerd*, for appellant, as to insufficiency of release cited: King v. Thompson, 87 Pa. 365.

*E. A. Walling*, with him *Jno. P. Vincent*, for appellee, on insufficiency of disclaimer, cited: DuBois Boro. v. Baker, 120 Pa. 266.

OPINION BY MR. JUSTICE STERRETT, October 3, 1892.

We find nothing in either of the thirty-eight specifications of error that requires the reversal of this judgment. The alleged negligence of the defendant, which is claimed to have been the proximate cause of the injury complained of, was so clearly established by the evidence that the jury could have little if any difficulty in finding the fact in favor of the beneficial plaintiff. The question of contributory negligence, mainly relied on by the defendant, was fairly submitted to the jury, and that issue of fact was also found in her favor. The case hinged upon these and other subordinate questions of fact which were so manifestly for the consideration and determination of the jury that no extended notice of either is necessary. They were all fairly submitted in a clear and comprehensive charge to which no just exception can be taken. The questions of law, presented in the points for charge submitted by the learned counsel for the respective parties, were correctly ruled. In affirming, without qualification, those submitted by plaintiffs' counsel, the jury were rightly instructed, among other things, that if they found the water pipe in question was constructed by defendant borough in the public highway, and that, for some weeks prior and up to the time of the accident, said pipe was in such a condition that water escaped therefrom and was thrown into the air with a hissing noise, from time to time, in such a manner as was calculated to frighten ordinarily gentle and road-worthy horses, and actually did frighten such horses, passing along the highway, these facts would be evidence of negligence on the part of the defendant borough; that it was the duty of the borough in constructing its water pipe at the place in question, to construct it in a safe manner, and exercise due diligence to keep and maintain it, at all times, in such a condition as not to endanger the safety of people law-

fully passing along the highway; that, unless the contrary is shown by the evidence, the presumption is that plaintiffs were in the exercise of due care at the time the accident happened, and that the team Mr. Baker was driving was road-worthy. These and other instructions, given as requested, were fully warranted by the evidence, and appear to be free from error There was no error in answering defendant's points for charge, nor in any of the rulings on questions of evidence.   There appears to be nothing in the record that would justify a reversal of the judgment entered on the verdict.

Judgment affirmed.