# C. H. Hookey and Mrs. Ella Hookey, his wife, *v.* The Borough of Oakdale, Appellant.

*Negligence—Sudden peril—Rules of conduct.*

When a person is put in sudden peril by the act of another and, in the instinctive effort to escape from that peril, falls upon another peril, it is immaterial whether, under different circumstances, he might and ought to have seen and avoided the latter danger.

If a man has gotten himself, without negligence, into a position of danger, he is not responsible if he makes a mistake of judgment in getting out. A man placed under such circumstances, if he uses his judgment honestly, is not responsible, although he might have done better if he had acted differently.

*Negligence—Contributory negligence in sudden peril—Question for jury.*

A man driving along a public road undergoing repairs, in avoiding some stones on his right, ran into a fire plug on the left of the road. He permitted his horse to continue on a trot after first sighting the stones which occupied a part of the roadway for a long distance. *Held*, that the question of contributory negligence was properly left to the jury.

*Municipal law—Independent contractor—Liability.*

A municipal corporation is not liable for an injury occasioned by the neglect of independent contractors with it, or of their agents and servants; the remedy is against the contractor alone.

*Municipal law—Independent contractor—Question for jury.*

Where there is evidence tending to show that an injury for which the action is brought against a municipality arose upon the act of an independent contractor, it is error for the court not to leave the question to the jury under adequate instructions.

Argued May 7, 1897.   Appeal, No. 119, April T., 1897, by defendant, from judgment of C. P. No. 3, Allegheny Co., Nov. T., 1895, No. 677, on verdict for plaintiff.   Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed.

Trespass for overturning wagon.   Before KENNEDY, P. J.

The facts sufficiently appear in the opinion of the court.

Verdict and judgment for C. H. Hookey for $75.00 and for Mrs. Ella Hookey for $300.   Defendant appealed.

*Errors assigned* were (1) In answering in the negative the first point submitted to it by the defendant, which point and answer were as follows: "That the plaintiff having testified in substance that on the night of the accident he was driving along the street at a trot; that for some distance before he came to the place where the accident occurred, he saw that the street was incumbered by a pile of stones; that he saw these stones for a considerable distance before the accident by reason of the white character of the stones; that he did not slacken the pace of his horse but drove at a trot up to the place of the accident, and further that he did not look to the right, the side on which he struck the water plug, at all, to the time of the accident; that this is such want of care under the particular circumstance of the case as will prohibit the plaintiff from recovering, and the verdict of the jury should be for the defendant. *Answer:* This point is refused." (2) In answering in the negative the second point submitted to it by the defendant, which point and answer were as follows: "That the uncontradicted evidence in the case shows that the obstruction in the road consisted of certain stones which drove the plaintiffs to the right, as they complain, which were placed there by a contractor who had an independent contract to construct the retaining wall at the place of the accident; that the said contractor was doing the work at a compensation per perch, finding the materials and doing the work; that the borough had or retained no supervision over the work or its management, and under this condition of affairs the defendant is not liable for any injury the plaintiffs may have suffered. *Answer:* This point is refused." (3) In answering in the negative the third point submitted by the defendant, which point and answer were as follows: "That under all the evidence in the case the verdict must be for the defendant. *Answer:* This point is refused."

*E. E. Fulmer*, with him *Jos. R. McQuaide*, for appellant.—It is well settled that where a contract is let by a municipal corporation to an independent contractor, and the work placed in his charge, the municipality is not responsible for the negligence of the contractor: Erie v. Caulkins, 85 Pa. 247; Wray v. Evans, 80 Pa. 102; Improvement Co. v. Rhoads, 116 Pa. 377; Painter v. Mayor, 46 Pa. 213.

As to the question of contributory negligence Hentz v. Somerset Borough, 2 Pa. Superior Ct. 225; Hotchkin v. Phillipsburg Borough, 6 Cent. Rep. 898; Haven v. Bridge Co., 151 Pa. 620 are cited.

*F. P. Sproul*, with him *Thomas M. Marshall*, Jr., for appellee.

OPINION BY WILLARD, J., July 23, 1897:

The injury sustained by the appellee was occasioned by the overturning of a wagon in which she and her husband were riding on Clinton avenue in the borough of Oakdale on October 21, 1895. At the point where the accident happened the road follows the valley of the north branch of Robinson's Run, and by the action of the water of the stream upon the road its width had been reduced from thirty-three feet to less than twenty-five. It became necessary to erect a retaining wall of stone along the bank in order to widen and protect the street. In the curve of the street near the footway a water plug was located for the use of the borough. There was evidence that the building of the retaining wall was let by contract to Samuel Gamble, and that at the time of the accident it was being constructed by him. On the day of the accident C. H. Hookey and his wife, according to Mr. Hookey's testimony left home between two and three o'clock in the afternoon for a drive. They went out to the North Branch by the Pittsburg and Steubenville Pike and returned by the North Branch road or Clinton avenue, reaching the place of the accident between seven and eight o'clock in the evening. According to the testimony of Mrs. Hookey it was so dark she could not see her hand before her face. In making the repairs, stone had been placed along the side of the street opposite the fire plug, extending along the side of the road about one hundred and fifty feet. The space left between the stone pile and the fire plug was about eight feet; no light or other warning of danger had been provided at the place where the stones were piled. The testimony of Hookey discloses the fact that he had been up and down the road a great many times for four years prior to the accident. He also testified that he was along the road when they were grading it up, but not after they commenced putting in the stone. In describing the accident Hookey's testimony is as follows: " Q. Tell the jury how the

accident occurred.   A.  Well, I was coming down that road and
my horse was traveling at the usual trot.   I seen the stones—I
suppose they were scattered along the road for probably one
hundred or one hundred and fifty feet.   I never measured the
distance, that is what I estimate it at.   I saw the upper edge
of the stone.   I kept off the stone along there and I was just
clearing the stone, and when I come along the first thing I
knowed there was a crash, and the buggy went end over end,
and I released myself, I don't know how I got out, but I was
on my feet.   I felt a little sore in one knee the next day.   I
suppose I struck on one knee but it did not hurt me.   I had
the reins of the horse in my hand and looked around and heard
my wife moaning.   She was laying on the stone and the buggy
on top of her.   It struck the box on the right hand side of the
road, and was thrown to the left end over end, like that.
Q. What was the first thing you saw when you came to the
place of the accident?   A. The first I saw was some of these
stones up along the road.   Q. How far along could you see the
stones?   A. A person could not see very far.   They were kind
of white quarried-out stones, and you could naturally see them
a little.   Q. You turned to the right after striking the stones?
A. Yes, sir, I kept off the stone and ran into this box out on
the street.   Q. How far out toward the middle of the road from
the edge of it did this stone pile extend?   A. As near as I
could get at it, I should judge there was over eight feet there.
I never put a tape line on it, but there was over eight feet of
the road open over which you could have driven.   That was
the amount of the road I think for traffic."

On cross-examination the witness said: " Q.  When did you
first notice the pile of stones?   A. When I was coming driving
in there.   Q. Driving at a trot?   A. Yes, sir, my horse was
trotting.   Q. Were you driving at a trot when you hit the box?
A. I was.   Q. And did you consider that place dangerous when
you were driving along there?   A. I didn't consider it danger-
ous, very dangerous.   As long as I wasn't onto anything I
didn't, and everybody else drives there.   I didn't suppose the
road was closed up that close.   Q. You saw the pile of stone
out in the middle of the street?   A. I saw it when I started in
above.   Q. And you saw them all along the side?   A. Yes,

sir, I wouldn't have touched the stone if it hadn't been for the obstruction on the other side of the street."

Mrs. Hookey testified as follows: "Q. When you came to the place where the accident occurred, what time in the evening was it? A. It was dark. Q. It was after dark? A. Yes, sir, you couldn't see your hand in front of you."

On cross-examination: "Q. You said you were driving at the ordinary rate? A. Yes, sir. Q. Going at a trot? A. Yes, sir, just as our horse always goes."

In a space but eight feet wide between a stone pile and a water plug projecting two feet above the ground there is evident danger in driving at night in the absence of a light placed at the point of danger. It was negligence on the part of the person in charge of the work of repairing the street to obstruct the street with a pile of stone without a signal light to warn travelers of the danger.

It is true that the right of the public to the use of the highway is subordinate to the right of the public authorities to make repairs for the public benefit: Township v. Anderson, 114 Pa. 643. It is also the rule that the road should have been closed by the authorities or sufficient warning of the danger given: Humphreys v. Armstrong Co., 56 Pa. 204; Born v. Plank Road Co., 101 Pa. 334.

The road was open and used by the public, and under the evidence it cannot be said that it was a case of using a road known by the plaintiff to be dangerous. The evidence shows that the plaintiff did not know of the stone pile till suddenly confronted with the obstacle at the time of the accident. The question presented, therefore, is whether under the evidence the conduct of the plaintiff, who was driving the horse, was such as to make it the duty of the court to declare his conduct negligence as matter of law, or whether it was the duty of the court to submit that question to the jury under proper instructions. Could the court declare that it was negligence per se for the plaintiff to drive his horse at a trot at the time of the accident, or was it for the jury under proper instructions to determine whether the plaintiff's conduct, under all the circumstances, was that of an ordinarily prudent man, and that he exercised ordinary care?

Suddenly, in the darkness, while driving his horse at a trot on a public highway, where he had a right to be, he was confronted

with a pile of stone along the road extending to the center thereof. From their color he could and did distinguish them, and in guiding his horse so as to clear them, his wagon wheel struck against the fire plug and the wagon was upset. In avoiding the danger on the left hand side of the road, he encountered another obstacle upon the right. The water plug was not dangerous under ordinary conditions, but it became so on account of the narrowing of the roadway by the projecting stone pile. " When a person has been put in sudden peril by the negligent act of another and, in an instinctive effort to escape from that peril, falls upon another peril, it is immaterial whether, under different circumstances, he might and ought to have seen and avoided the latter danger : " Vallo v. Express Co., 147 Pa. 404.

Should he have stopped his horse when he first saw the pile of stones ? Was he negligent in trotting his horse till he struck the fire plug ? Under the circumstances of the case these were questions for the jury to determine and not for the court.

" If a man has got himself, without negligence, into a position of danger, he is not responsible if he makes a mistake of judgment in getting out. A man placed under such circumstances, if he uses his judgment honestly, is not responsible, although he might have done better, if he had acted differently : " R. R. Co. v. Werner, 89 Pa. 59.

" A plaintiff placed in sudden peril by defendant's negligence is not to be held liable for a mistake of judgment in not using the best possible means of escape : " Baker v. North East Borough, 151 Pa. 234.

" The plaintiff, while driving along a plank road, abreast with another wagon, at the rate of about twelve miles an hour, between nine and ten o'clock on a dark night, was injured by running into a pile of stones lying in the track of the road. The stones were to be used in erecting a building and had been lying there several days ; there was no light or signal to warn travelers. The stones were about a quarter of a mile from a tollhouse but there was no evidence that the company's officers had actual knowledge of their being there. In an action against the plank road company to recover damages, the court entered a nonsuit on the grounds that there was no evidence of negligence on the part of the defendant and that the plaintiff was guilty of contributory negligence. Held, to be error. The questions of

negligence and contributory negligence should both have been submitted to the jury."

" To drive at the rate of twelve or fifteen miles an hour is not negligence per se.   To determine whether such speed is within or without the measure of reasonable care, the width of the road, its condition, the number of persons and vehicles thereon at the time, and all other circumstances must be considered.   The road may be inside the limits of a city corporation, and in fact a country road.   It may be known as a much used thoroughfare, in good repair, or as one that is rough and perilous.   The degree of care shifts with the ever shifting circumstances, and whether driving at a certain rate of speed is negligence can alone be determined by the jury:" Born v. Plank Road Co., 101 Pa. 334.

We are of the opinion that under the evidence it would have been error to instruct the jury that the plaintiffs were guilty of contributory negligence and therefore not entitled to recover. It was emphatically a case of sudden emergency, where in attempting to escape one danger another presented itself calling for the quick exercise of judgment, and whether Mr. Hookey, in driving his horse on the occasion exercised the ordinary judgment of a prudent man confronted with a danger that he had no right to expect, or whether he was negligent, was for the jury to decide.   To declare him guilty of negligence because he drove his horse at a trot after dark or even at a gait of twelve miles an hour would be error, and whether he brought his horse from a trot to a walk as quickly as he should have done after he first saw the stone pile, was properly submitted to the jury.

In Ginther v. The Borough of Yorkville, 3 Pa. Superior Ct. 403, in an opinion by our Brother SMITH, this court held that " a municipality is not liable for the negligent performance of a contract by an independent contractor resulting in injury to the property of a citizen, even if the work is done under the direction of an official authorized to inspect it, who is vested with all power necessary to secure compliance with the contract, payment being conditioned on his approval of the work."

Under this authority the very important question is presented in this case, whether, in view of the uncontradicted testimony, the appellant was liable for the injury sustained by the appellees.

By the testimony of Mr. Gamble, the contractor, it appears that he had the contract for excavation and building the retaining wall, which the borough awarded to him as the lowest bidder; that he was to be paid for the work and material a stated price per perch; that the stones were hauled and placed upon the road by him or under his instructions and were put there by him in carrying out the contract; that he completed the work in pursuance of the contract, and that the borough never exercised or attempted to exercise any authority over him or his employees in the matter of carrying out the contract, except to see that the work was done in accordance with the specifications.

The testimony was not questioned, and when the case was submitted it stood uncontradicted. In the second point of the defendant the court was asked to charge the jury as follows: " That the uncontradicted evidence in the case shows that the obstruction in the road consisted of certain stones which drove the plaintiffs to the right, as they complained, which were placed there by a contractor who had an independent contract to construct the retaining wall at the place of the accident; that the said contractor was doing the work at a compensation per perch, finding the materials and doing the work; that the borough had or retained no supervision over the work of its management, and under this condition of affairs the defendant is not liable for any injury the plaintiffs may have suffered." The court answered " This point is refused."

The answer of the court was of vital importance to the defendant's case. If the negligent act of blocking one half of the roadway with stones, and leaving them without a light or other means to warn travelers at night of the danger, was the work of this contractor, over whose acts the borough retained and had no control, why should it be called upon to answer for the contractor's negligence? The question was not called to the attention of the jury by the trial judge in his charge, except in his unexplained answer to the point. What construction the jury placed upon the answer is unknown. If he meant to have them understand that the credibility of the witness was for them it was his duty to so instruct them. We understand that he meant by his unqualified answer that, although it is true and uncontradicted that Samuel Gamble had an independent con-

tract for doing the work by the perch, did the work, placed the stones in the road which caused the injury, and, although the borough had and retained no control over his actions, yet as matter of law the borough is liable for the injury. With this understanding, which is a fair inference to be drawn from the point and answer, we must hold it to be error. We think the importance of the question presented demanded more explanation from the judge to the jury than his unexplained answer afforded. If the facts were found as stated in the point, the law was correctly stated, and the point should have been affirmed: Eby v. Lebanon Co., 166 Pa. 632; Heidenwag v. Phila., 168 Pa. 72. In Thompson on Trials, par. 1030, it is said, "When the facts are undisputed or clear, the court should apply the law and determine the case. Thus the facts being conceded whether a given act is within the scope of a servant's employment has been held a question of law for the court." In Short v. Messenger, 126 Pa. 637, it appears that the point for charge was "that if the jury believed that the plaintiff abandoned the job, the defendant was justified in taking off the timber, and would not be liable in damages therefor." The court refused the point without explanation and, in reversing the judgment, the chief justice said, "When a point is put as matter of law and it is refused by the trial judge without the reason therefor being given, it will be presumed that it was refused because, as matter of law, it was not good, and not because there was no evidence to support it."

The burden was upon the plaintiff to prove negligence on the part of the defendant. It was negligence, as before stated, to leave the stone piled in the roadway without something to warn travelers at night of the danger. But the uncontradicted testimony shows that they were placed there by the contractor.

In a long line of cases involving the question of negligence the rule is established in Pennsylvania that where the facts are undisputed it is the duty of the court to pass upon the question of the defendant's negligence. There is not a scintilla of evidence to rebut the plain statement of the contractor, and he who caused the injury should be held liable for the damages resulting from his act; for which he alone, according to his own testimony, was responsible. There is no good reason why the

appellant should be made to respond in damages for the negligent act of another over whom it had no control.

It may be said that this is an obstruction in a street, and a municipality cannot escape liability by showing that the obstruction was placed there by an independent contractor.   It is said by Elliott in his work on Roads and Streets at page 467 : "If a municipality knowingly permits a dangerous excavation to negligently remain open and unguarded so as to constitute a defect in the street, rendering it unsafe for travel, the municipality cannot escape liability to one injured thereby, on the ground that the work had been let to an independent contractor."   The learned author cites numerous authorities in support of the text, but cites Painter v. The Mayor, 46 Pa. 213, as holding a different doctrine.   The rule laid down by Justice STRONG in Painter v. The Mayor, etc., of Pittsburg, supra, has been followed by our Supreme Court in an unbroken line of decisions.   In that case the excavation had been made in the street by one who had an independent contract with the city to do the work, and it was held that, "a municipal corporation is not responsible for an injury occasioned by the neglect of contractors with it, or of their agents and servants ; the remedy for the injury is against the contractors alone."   The reason for the rule is that the principle of respondeat superior applies to the contractor alone, and in such case there cannot be two superiors severally responsible.   To the same effect are Reed v. Allegheny City, 79 Pa. 300, Erie v. Caulkins, 85 Pa. 247, Susquehanna Depot v. Simmons, 112 Pa. 384, Improvement Co. v. Rhoads, 116 Pa. 377, Trego v. Honeybrook Boro., 160 Pa. 76, and Eby v. Lebanon Co., 166 Pa. 632.   In the above cases the actions were for injuries caused by obstructions in the highway.   And in each case it was held that if the obstruction was placed in the highway by an independent contractor, over whom the municipality had no control, no action could be maintained against the latter. Notwithstanding respectable authorities to the contrary such are the decisions of our Supreme Court, which we are bound to follow.   In the Borough of Susquehanna Depot v. Simmons, supra, it is held: 1. "A municipal corporation, granting to one a license for a purpose proper and lawful, in this case to lay and provide water pipe in the street, is not liable to one injured by reason of the misuse or abuse of that license, whether the

same be by an independent contractor for the work from the licensee, or by the licensee himself." 2. "That the street commissioner, or other authorities of the municipality had knowledge, that the said license was being misused or abused by the independent contractor of the licensee or by the licensee himself, in that the excavations for water pipes in the streets were left in an unguarded and dangerous condition, will not render the municipality liable for damages resulting from such misuse of abuse of the license."

In Improvement Co. v. Rhoads, supra, it was said by Mr. Justice CLARK: "The rule that in actions for negligence municipal corporations may in certain cases cast the responsibility upon an independent contractor whose negligence caused the injury has never been extended to corporations for profit."

In Trego v. Honeybrook Borough, supra, it is said: "It is a mistake to assume, as appears to have been done by defendant in this case, that property owners, who—by the direction of the borough authorities and in obedience to the requirements of an ordinance for that purpose—are engaged in paving and curbing the sidewalk in front of their respective properties, are in any proper sense, contractors exercising an independent employment over which said authorities have no control. The well-recognized principle of Painter v. Mayor, 46 Pa. 213, Reed v. Allegheny City, 79 Pa. 300, and that line of authorities, has no application in such cases."

The burden was upon the defendant to establish the fact that the injury was caused by the act of an independent contractor, and it may be justly claimed that the credibility of the defendant's witness was for the jury. Therefore this case must go back for another trial, in order that the jury may be fully instructed on this important question. We do not think the unexplained answer to the point a sufficient exposition of this important feature of the case.

The second assignment of error is sustained, the third is overruled, the judgment is reversed and a venire facias de novo awarded.