# Norbeck *v.* Philadelphia, Appellant.

*Negligence—Municipalities—Repair of streets—Independent contractor —Retention of municipal control.*

1. A municipality is not liable for the negligence of an independent contractor while engaged in the construction or repair of a street of which he has the exclusive control or charge, but to relieve the municipality from liability in such cases the accident must be the result of the negligence of the contractor, and he must have such exclusive control of the street where the accident occurs as to authorize him to prohibit the use of it by the public.

2. Whenever a municipality directs a street to be kept open and thereby invites the public to use it, an obligation is imposed on the municipality to see that it is maintained in a reasonably safe condition for travel.

3. Where a municipality lets a contract to an independent contractor to widen and raise the grade of a street, but provides that a certain portion of the street shall be continuously kept open to the public during the progress of the work, and the municipality retains the control of such open portion by its police and inspector but permits a dangerous hole to continue in such portion for three months, and a person is injured by reason of such obstruction, the city is liable for the injuries sustained.

Argued Jan. 18, 1909. Appeal, No. 184, Jan. T., 1908, by defendant, from judgment of C. P. No. 1, Phila. Co., June T.,

1906, No. 1,883, on verdict for plaintiff in case of Sadie Norbeck
v. City of Philadelphia. Before MITCHELL, C. J., FELL, BROWN,
MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Trespass to recover damages for personal injuries.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $6,000. Defendant
appealed.

*Error assigned* among others was in refusing binding instruc-
tions for defendant.

*Thomas D. Finletter*, assistant city solicitor, with him *Harry
T. Kingston*, assistant city solicitor, and *J. Howard Gendell*, city
solicitor, for appellant.—Where the city has no voice in the
manner of the performance of the contract but only in its re-
sults, it is better policy to leave the contractor in full control
of the scene of operations and of the work, and where he is so in
full control his employer is not liable, but he is: Painter v. Pitts-
burg, 46 Pa. 213; Reed v. Allegheny, 79 Pa. 300; Mahanoy
Township v. Scholly, 84 Pa. 136; Erie v. Caulkins, 85 Pa. 247;
Eby v. Lebanon County, 166 Pa. 632; Heidenwag v. Philadel-
phia, 168 Pa. 72; Burger v. Philadelphia, 196 Pa. 41; Rimby
v. Philadelphia, 208 Pa. 119; Harvey v. Chester, 211 Pa. 563;
Long v. Philadephia, 212 Pa. 125.

*Thomas Leaming*, with him *William J. Lawson*, for appel-
lee.—The city was liable: Burger v. Philadelphia, 196 Pa. 41;
Rimby v. Phila., 208 Pa. 119; Harvey v. Chester, 211 Pa. 563.

OPINION BY MR. JUSTICE MESTREZAT, March 8, 1909:

In February, 1906, the city of Philadelphia was engaged in
improving South Broad street from Moyamensing avenue to
League Island. The work had been let to a contractor and con-
sisted partly in widening the street from eighty feet to 160 feet;
in changing the grade so as to raise the street from twelve to
fifteen feet above the surrounding country; repaving and ma-
cadamizing the cartways and sidewalks, constructing sewers,

culverts, inlets and drains, etc.  Among the specifications attached to and a part of the contract was the following: "The contractor will be required to keep a portion of the street open at all times during the progress of the work, of sufficient width to accommodate travel, and at no time shall the road be closed to travel, but a good, safe and sufficient roadway shall at all times be maintained open to public use."  Broad street is the only public highway leading from the heart of the city to League Island, and hence the necessity for keeping it open for public travel during the time the improvement was being made.  It was traversed by trolley cars, carriages, supply and delivery wagons, automobiles and other traffic between the city and League Island.  The work of improving the street was begun at Moyamensing avenue and progressed south towards League Island.  In making the improvements, the contractor raised the level of the street in three longitudinal strips.  He first constructed an embankment on the west side of the street and on it the trolley tracks were placed and a plank road was constructed sufficiently wide to permit a wagon to pass one way.  The south-bound traffic used this roadway while the north-bound traffic used the lower grade of Broad street.  A similar embankment was then built on the east side of the street, and when completed was used by the north-bound traffic.  The two embankments having been finished, the intervening space on the street was filled in to bring the whole street to the proper level.

On February 15, 1906, Norbeck, the plaintiff's husband, was driving a two-horse, four-wheel brick wagon on South Broad street where it was being improved.  A companion was with him and they both sat on a high seat in the front part of the wagon, the plaintiff being on the right, and driving the horses.  They proceeded south almost to League Island and after discharging their load east of Broad street, they returned to the street and drove north.  The Pennsylvania railroad crosses Broad street a short distance south of the place where the accident occurred, and since the completion of the improvement the tracks on the street are crossed by an overhead bridge.  The plaintiff claimed and introduced evidence to show

that her husband crossed under the bridge and while driving on the roadway on the east embankment north of the bridge, the right front wheel of the wagon was precipitated into a hole, he was thrown to the ground, and the wheel of the wagon passed over him killing him instantly. The plaintiff's witnesses testified that this hole was four feet long, two feet wide and hub deep, that it was 400 feet north of the bridge, and had existed there for at least three months. They also testified that at the time of the accident the hole was filled with slush of the color of the road, and was not easily seen or distinguished. The plaintiff contended that at the time of the accident her husband was driving carefully, that the road was in a good, solid condition, except the hole which caused him to be thrown from the wagon; and that the part of the road where the accident occurred had been opened and used by the public for at least six months prior to the time Norbeck was killed.

The city's position on the trial was and its testimony tended to show that the plaintiff's husband in driving north crossed the bridge over the railroad tracks and then drove northeast to the eastern embankment, a distance of about 150 feet north of the bridge, and as he turned on to the embankment he was thrown to the ground and killed. It was claimed that at the time of the accident Johnson, the companion of the plaintiff's husband, was driving, that the latter was standing up in the wagon with his hands in his pockets, and that the team was going at a rapid rate. It is contended by the city that the place where the accident occurred was not on a completed or finished part of the highway and that there was no such hole as described by the plaintiff's witnesses; that if there was a hole which caused the accident it was simply a depression and incident to the change in the grade and the width of the street; that at the time and place of the accident the work was in active progress and the contractor alone was in charge and controlled the whole operation.

The case was submitted in a very fair and careful charge to the jury and they found in favor of the plaintiff. It is, therefore, established by the verdict that the accident occurred on the roadway on the east embankment at a point 400 feet north

of the bridge, that the road at ·that point had been opened to the public for several months and that a dangerous hole had existed there for at least three months prior to the accident. The verdict also negatives the contention of the city that the accident occurred 150 feet north of the bridge where the roadway was under construction and not completed.

Under the facts as admitted or found by the jury, it is apparent that the court would have committed reversible error had it affirmed the defendant's point and withdrawn the case from the jury. The point was submitted on the theory that the doctrine of Painter v. Pittsburg, 46 Pa. 213, was applicable to the facts of this case. The contention of the city is thus stated in its printed brief: "That Broad street, the scene of the accident, was, under the contract, in the absolute and entire control of the contractor and not of the city; that the roadway upon the eastern embankment where the accident occurred and the embankment itself, were temporary in character, necessarily so from the character of the contract and the work, and that the embankment and the road or way upon it were not in any sense a street or highway accepted by the city as such and over which it could exercise a control or upon which it could enter to make or direct necessary repairs to keep it in good condition."

It is manifest, we think, that the doctrine of Painter v. Pittsburg, 46 Pa. 213, can have no application to the facts developed at the trial of this case. The rule established by that and kindred cases is that a municipality is not liable for the negligence of an independent contractor while engaged in the construction or repair of a street of which he has the exclusive control or charge. But to relieve the municipality from liability in such cases the accident must be the result of the negligence of the contractor, and he must have such exclusive control of the street where the accident occurs as to authorize him to prohibit the use of it by the public.

In the case at bar, the agreement with the contractor did not place him in the exclusive control or charge of Broad street where the improvements were being made. Nor was it provided therein that the public could not use that part of Broad street.

On the contrary, it was distinctly stipulated, as we have seen, that the contractor should keep a portion of the street open at all times of sufficient width to accommodate travel, and maintain a good, safe and sufficient roadway for public use. This provision conclusively shows that it was the intention of the city that the street should be open to use by the public, and the duty of keeping it open for such use was imposed on the contractor by his agreement. It was in pursuance of this agreement that the street was kept open for public use, and the contractor could not close it or assume exclusive control over it during the progress of the work. As further evidence of the intention of the city not to place the exclusive control of the street in the hands of the contractor, it was under the surveillance of its policemen, and it had an inspector who inspected the work and reported daily to the city. He testified that his duties required him to see that the material was properly placed, to look out for ruts, to have holes filled up if any existed, and to see that the general traffic was in good shape. It is, therefore, clear that the city in letting the contract for the improvement of the street did not, during the progress of the work, turn over the street to the exclusive control of the contractor so that he could exclude the public from its use; but it reserved the right to compel the contractor to keep a good, safe and sufficient roadway on some part of the street open at all times for public use during the progress of the work. It had the authority and it was the duty of the city to enforce performance by the contractor of this stipulation of the agreement, and that it intended to do so appears from the fact that its own official kept close supervision over the work and over the roadways intended for use by the public. Whenever a city or municipality directs a street to be kept open and thereby invites the public to use it, an obligation is imposed on the municipality to see that it is maintained in a reasonably safe condition for travel. If this duty is neglected and injury results, by reason of a defect in the street, the municipality is not relieved by giving notice to one who is primarily liable as between him and the municipality: Wyman v. Philadelphia, 175 Pa. 117.

The findings of the jury under the instructions of the court,

.establishes the fact that Norbeck was not on a part of the street where the work was in progress and uncompleted, but that he was driving on a finished and completed part of the work, assigned by the contractor for use by the public. The evidence submitted to the jury was amply sufficient to sustain that finding. The hole which caused the accident was not an incident to the improvement being made, nor did it result from defective construction by the contractor, but was caused by the use of that part of the roadway by the public. That it was a very dangerous obstruction is apparent. Its size as well as the fact that it was filled with a slush of the color of the dirt of the roadway which prevented it being easily seen or discovered leaves no doubt of its dangerous character. It had been there, according to the evidence, at least three months, and the jury found that the city officials had constructive notice of its existence. It was the duty of the city's inspector, as he testified, to discover and have such dangerous obstructions removed, and this hole certainly called for immediate action by him. It was a menace to every traveler upon that roadway, and it was clear negligence for the city to permit it to remain there. It had the authority to require the immediate removal of the obstruction by the contractor, and if he neglected to remove it the city should have had it done. Its failure in this respect constitutes negligence for which it is liable in this action.

We are of the opinion that the case was for the jury, and it was properly submitted by the learned trial judge.

The assignments of error are overruled, and the judgment is affirmed.