## Weiss *et al. versus* Pennsylvania Railroad Co.

1. In an action by a widow against a railroad company for causing the death of her husband by a locomotive, as he was crossing their track on a street in a carriage, the plaintiffs made out a primâ facie case of negligence, without proving affirmatively that the deceased had "stopped and looked and listened." *Held* that the presumption in law was that he had stopped, looked and listened and the burden of proving contributory negligence was on the defendants.

2. A witness of defendant testified that deceased could have seen the train coming if he had looked. *Held* that this did not justify the court in instructing the jury to find for defendants.

3. Pennsylvania Railroad Co. *v.* Weber, 26 P. F. Smith 157, adopted.

October 21st 1875. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Erie county:* Of October and November Term 1875, No. 221.

This was an action on the case, commenced October 18th 1871, by Katharina Weiss, widow of Jacob Weiss, deceased, and Anna Weiss and others, minor children of said deceased, against The Pennsylvania Railroad Company.

, The action was brought to recover damages for the killing of the deceased by one of the defendants' trains, as was alleged through negligence.

The case was tried, January 6th 1875, before Wetmore, P. J., when the following facts appeared in evidence:—

On the 1st of June 1871, Weiss, the deceased, was driving a light wagon, with one horse, going southwardly along Parade street in the city of Erie. This street crossed the Philadelphia and Erie railroad, of which the defendants are the lessees; at the place of crossing there were two railroad tracks of the defendants on the south, and four tracks of the Lake Shore and Michigan railroad further north. The defendants' depot was west of the crossing at Parade street, and at the time of the disaster the train had just left the depot and was moving eastward. The deceased had crossed the Lake Shore railroad tracks, and in crossing defendants' tracks he was struck by the engine and killed.

There were two freight cars standing on the track north of that on which the passenger train was passing; one standing so far out in Parade street that persons in passing had to go into the road;

[Weiss *v.* Pennsylvania Railroad Co.]

freight cars also stood on the other side of the street; a passage way was left for teams to go through, but it was quite narrow. When the deceased was last seen before he was struck, his horse seemed much frightened and he appeared to have lost control of him. The plaintiffs' testimony was, that there was no bell rung nor whistle sounded.

The rules of the company fixed six miles an hour as the "highest allowable speed" for their trains in passing through cities, &c. The witnesses differed very materially as to the rate of speed at which the train was moving, their estimates being (according to the statements in the respective paper-books), from six to twenty-five miles per hour. The evidence was conflicting also as to ringing the bell and sounding the whistle.

The foregoing facts are from the history of the case as given in the paper-books. None of the evidence, except the following from one of the defendant's witnesses, was given:—

J. W. Eyster testified: "Was running on Pennsylvania railroad as mail agent in 1871, in the United States employ; was on the train; remember accident; were four cars in train. I was sitting in mail car window; ran slow to round-house, there put on a little speed; then Martin whistled; were two cars north of us, one reaching half a car length over the sidewalk. Nothing north of there; saw man down Parade street coming to track rather fast; he was about one or two tracks from ours. He did not stop; his horse seemed wild and wanted to go. I saw him just as he drove on to the Lake Shore track; I saw him plainly; he could have seen the train if he had looked; the bell was ringing at this time; he might not have seen engine, but could have seen cars; no cars on west side, unless way over on north track, but they did not obscure my view; plenty of cars on east side of track. Noticed him in particular, because he had a nice horse, and was driving so fast; he struck the horse with a whip just before he reached track; can't say how fast we were running; we may have been running twelve miles an hour. I ran every day there; heard the whistle by Crouch's elevator; think we were running as usual."

On cross-examination he said: "When I first saw him we had crossed German street; we had gone, maybe, a train's length beyond German street, when I saw him coming on track; there might have been some cars on north side sufficient to obscure view; I only saw those two cars. I saw horse because I was sitting with one foot out of the mail car window; and looking that way, he came very fast, so that kegs bounced in the wagon. Horse seemed to want to go, and he was sawing him just as he got on the track, and when he got close up he hit the horse twice with the whip that I saw; heard whistle about German street, that is where he always whistles and where he whistled that day, and bell was ringing. Did not make any effort to stop the horse until he got

[Weiss *v.* Pennsylvania Railroad Co.]

on the track, where he reined and struck the horse; was two or three tracks from ours."

The plaintiff's points were:—

1. If the jury find from the evidence that the view of the track, on which the train was approaching Parade street, was obstructed by freight cars standing in Parade street for the purpose of being unloaded; that the train was running from twenty to twenty-five miles per hour; that by the rules of the railroad company they were allowed to run at a rate of speed not greater than six miles per hour; that no watchman or flagman was stationed at the crossing; that no whistle was blown as required by the rules of the railroad company, and that Parade street was one of the principal streets in Erie for persons to drive or walk upon, then the Pennsylvania Railroad Company, by its servants, was guilty of gross negligence, and the question whether or no Jacob Weiss, deceased, husband of the plaintiff, was guilty of concurring negligence, becomes a question of fact for the jury to pass upon.

2. If the jury find from the evidence that the Pennsylvania Railroad Company, by its agents, were guilty of gross negligence in the manner and ways as set forth in the first point, and that Jacob Weiss, deceased, used reasonable and ordinary care in passing the tracks of said company on Parade street, and if the jury find that said Weiss was killed by one of the locomotives of said company, then the plaintiff is entitled to recover.

3. If the jury find from the evidence that the horse of Weiss, the deceased, became frightened and unmanageable within a short distance of the track of the Pennsylvania Railroad Company, and that in consequence this horse rushed upon the track, then the question of concurring negligence on the part of the said Weiss is a question of fact for the jury to pass upon.

The court answered the points as follows:—

"Plaintiff's first and second points answered in the general charge, to which reference is made.

"The third point is answered as follows:—

"It was an act of negligence, under the circumstances, to be so near the track on which defendant's train was passing, and does not alter the legal conclusion which we have stated in the general charge, and your finding under the evidence should be for defendant and the court so directs."

The court charged:—

"If Jacob Weiss, deceased, approached and attempted to pass over the railroad track in the manner stated by the witness, J. W. Eyster, it was negligence on his part and the plaintiff cannot recover.

"When a party approaches a railroad crossing, and has a full view of the track both ways a sufficient distance to see approaching trains, and there are none to interfere, he can pass over without

stopping; but if the tracks are numerous, and the trains frequent, or the view is obstructed by cars on the track, or otherwise, then it is a duty to pause, look and listen, and the violation of this duty is a negligence that defeats an action for damages for any injury that may occur."

The verdict was for the plaintiff.

The plaintiff took a writ of error and assigned for error:—

The answers to the points, and the charge of the court, and directing a verdict for defendants.

*Davenport & Griffith*, for plaintiffs in error, cited Penna. Railroad Co. *v.* Weber, 26 P. F. Smith 157; Penna. Railroad Co. *v.* Lewis, *antea*, p. 33.

*J. R. Thompson*, for defendants in error.

Mr. Justice SHARSWOOD delivered the opinion of the court, November 4th 1875.

When the plaintiffs below closed their evidence, they had a perfect primâ facie case to go to the jury. They had given evidence of the negligence of the defendants, and no contributory negligence of the deceased appeared. The presumption of law was that he had done all that a prudent man would do under the circumstances to preserve his own life, and that he had stopped and looked and listened: Penna. Railroad Co. *v.* Weber, 26 P. F. Smith 157. The onus of proving contributory negligence was thus clearly cast upon the defendants. "It is true," says Mr. Justice Williams, "that when the plaintiff's own evidence discloses contributory negligence there can be no recovery; but if it does not, the burden is on the defendant to disprove care; and in such case the question of negligence is for the jury." It is clear, then, that there was error in the binding direction given by the learned judge to the jury to find for the defendants. The testimony of one witness that Jacob Weiss did not stop, and that he could have seen the train if he had looked, did not justify the court in taking the case from the jury. The fact that the horse the deceased was driving became frightened and unmanageable a short distance from the railroad, if the animal was a gentle one, and was frightened through the negligence of the defendants, and being beyond the control of the deceased, rushed on the track, was an important element bearing upon the case.

The question of concurring negligence in the deceased, under all the circumstances of the case, should have been submitted to the jury.

Judgment reversed and *venire facias de novo* awarded.