## Duda, Admrx., Appellant, v. Carothers.

Argued September 28, 1954. Before Stearne, Jones, Chidsey, Musmanno and Arnold, JJ.

*Alexander J. Bielski,* for appellant.

*John A. Robb,* with him *Van Der Voort, Royston, Robb & Leonard,* for appellee.

OPINION BY MR. JUSTICE ARNOLD, November 8, 1954:

Plaintiff appeals from the order of the court below refusing to take off a compulsory nonsuit entered in an action of trespass. The case arises out of the death of plaintiff's decedent after being struck by defendant's automobile.

The accident occurred on a twenty foot public highway at 10:30 A.M. on a clear, dry day. Decedent had been walking in a northerly direction on the berm and on his left side of the road. One Eckman, driving in the same direction, stopped his car on his side and "hollered back" to offer decedent a ride. As he did so, he saw defendant's automobile about a "car length" from decedent, proceeding southerly on the paved portion of the highway at a speed of 30 miles per hour. Eckman's warning to decedent of the car's approach was not heeded, and decedent "went to take a step . . . lost his balance . . . went forward and the car struck him." Defendant's car was brought to a stop on the pavement within a "car length and a half" from the

point of collision, and the only skid marks were approximately one foot in length on the paved portion of the highway. The damage to defendant's car was on the side of the right headlight, the windshield, and the right door.

Plaintiff contends that defendant was negligent because deceased was struck when "standing on the berm." The difficulty with this contention is that it is not supported by the evidence. Eckman testified: "Q. Now, do you know of your own knowledge as to whether Duda, the decedent, was on the paved portion or on the berm portion when he was struck? A. I couldn't say that. Q. What did he do if you know? A. It looked like he just took a step forward toward the pavement of the road. It looked like he lost his balance and kind of went forward and the car struck him. Q. And for that reason you weren't able to state whether or not Mr. Duda was on the pavement proper or alongside of the pavement; is that right? A. That is right."[1]

Although the plaintiff starts with the presumption that the deceased used due care, the presumption does not establish the negligence of the *defendant*. In *Moore Exrx. v. Esso Standard Oil Company of Pennsylvania*, 364 Pa. 343, 344, 345, 72 A. 2d 117, this Court affirmed on the opinion of Judge SWENEY of the court below, in which that judge stated: "Two questions are here presented: (1) what effect, if any, does the presumption that decedent exercised due care have upon the question as to whether he was contributorily negligent as a matter of law; and (2) did plaintiff prove

---

[1] Eckman also testified that just before and immediately after the collision all four wheels of the defendant's car were on the pavement.

any negligence on the part of the defendants? The burden was upon the plaintiff to prove the defendants negligent by a preponderance of the evidence . . . It is our opinion that the presumption of due care is a presumption of fact. As such, the presumption is not evidence and should not be substituted for evidence; it has no probative quality. [Citing Watkins v. Prudential Insurance Co., 315 Pa. 479] . . . One thing is clear and that is that the presumption of due care does not prove the defendant negligent; nor does the presumption take the case to the jury, without real proof of the defendant's negligence. The presumption has no significance, until plaintiff has made out a prima facie case of defendant's negligence." See also *Ebersole v. Beistline*, 368 Pa. 12, 17, 82 A. 2d 11. The mere collision between the automobile and decedent-pedestrian does not prove negligence: *Thompson v. Gorman*, 366 Pa. 242, 246, 77 A. 2d 413.

In this case there is nothing which the jury could reasonably use as a basis for a finding of negligence in the defendant, and it is not permitted to speculate or guess: *Lanni v. Pennsylvania Railroad Company*, 371 Pa. 106, 110, 88 A. 2d 887.

Judgment affirmed.

———

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

An ancient Chinese proverb proclaimed that a picture was worth a hundred words. With the passage of time the ratio was augmented by Oriental philosophers who gravely announced that a picture was worth five hundred words. This self-speaking epigram spoke loudly and eventually was heard in the Occidental world where it was duly worked up to declare that a

picture was worth a thousand words. Yankee cartoonists and photographers boosted it to ten thousand to one, and it is not known with precision what the odds are today.

In many ways the comparison between spoken words and pictures is empty of merit because there are some written messages which convey meaning that the most priceless painting could never conjure. The beauty and spirituality of the Sermon on the Mount and Lincoln's Gettysburg Address go infinitely beyond what pictures and three-dimensional reproductions could ever portray. Be that all as it may, there can be no doubt that a photograph of the locale of an automobile accident usually can tell more than scores of pages of testimony from witnesses who stumble, equivocate, blunder, and contradict under the driving examination of friendly or enemy attorney.

The case before us is directly in point. F. E. Eckman witnessed the accident which is the subject matter of this litigation. During the oral examination there were times when his testimony was far from edifying or illuminating. For instance, under plaintiff's attorney questioning, the following ensued*: "Q. Now, then, where were you driving and in what *direction* were you driving on the morning of May 30, 1950, Mr. Eckman? A. *I was going to visit my mother. . .* Q. Now, you had gone up to your mother's; is that right? A. That's right. Q. What time did you arrive at your mother's? A. Around 10:30 or something like that. Q. I see. Did you stay very long at your mother's place? A. *She wasn't home.*"

Also: "Q. How far over on the right hand side of the road did you stop? A. I wouldn't say how far. I

---

* (Italics throughout, mine.)

don't know how far I was off—I was on the road. Q. On the road. Were you over at the extreme right of the road, the center of the road, or the left of the road? A. *I was on the other side.*"

What was the other side?

The attorney himself was not certain of directions: "Q. Now, then, when you got on the highway which direction were you traveling? A. Toward Boston. Q. And that would be traveling in a *southerly* direction? A. *North.* Q. Sir? A. North. Q. Northerly direction, yes. A. North."

It is to be noted, however, that when photographs were introduced in evidence, all the mist and fog of uncertainty which had up to that moment enveloped the story of the accident lifted. As indicated in the Majority Opinion, Eckman was driving in the same direction that the decedent was walking. Eckman stopped his car and offered the decedent a ride. At the trial, plaintiff's counsel displayed a photograph (Plaintiff's Exhibit No. 1), and Eckman testified as follows: "Q. Would you be able with the assistance of the picture here to indicate to the jury where your car was parked at the time of the accident? THE COURT: Wait before you mark it. (To Mr. Bielski): How do you want him to mark it? MR. BIELSKI: Q. Mark the outline of the car. A. Right across this line. That is a hillside (indicating). Q. And where was Mr. Duda standing at the time he was struck? A. Just about right in here (indicating). Q. Mark an 'X' and put a circle around that. And, looking at that picture, in what direction would you say the picture was taken? A. This is going up the hill."

This photograph, which the witness marked, is before me as I write. The "X" shows that the decedent with all geographical certitude was standing off the

road and and on the berm. How can this Court affirm a nonsuit based on a trial the evidence of which demonstrates that at the time of the accident the injured person was standing off the highway? In order to have been struck, the assailant car would have had to leave the highway or be so close to the berm as to constitute negligence by its very position.

Plaintiff's counsel presented another photograph (Exhibit 2): "Q. I show you plaintiff's Exhibit No. 2 and ask you whether or not you recognize that picture? A. I do. . . . Q. Would you be able to point out on that picture where Mr. Duda was standing at the time he was struck? A. Yes, sir. THE COURT: Q. You indicated that with an 'X' and a circle. A. Yes, sir. Q. Let me see that. The ink didn't take very well there. Can you 'X' that over a little?" The witness did "X" it over a little and that picture is here on my table as I write. It again reveals that the decedent was standing a foot or two off the road when the accident occurred.

It is true, as the Majority Opinion states, that Eckman at one time in his testimony wavered in his recollection as to whether the decedent was on the paved portion of the road or on the berm when he was struck. However, as against this equivocal reply, we have his positive answer: "Q. And what portion of the road was he walking on? A. *He was on the berm.*"

It is to be noted also that Eckman stated that there was adequate space on the road between Eckman's car and the spot where the decedent stood for the defendant's car to pass. Eckman also testified that the defendant failed to blow the horn of her car to warn the decedent.

Even if the accident happened as quoted by the Majority: "Q. What did he [the decedent] do if you know?

A. It looked like he just took a step forward toward the pavement of the road. It looked like he lost his balance and kind of went forward and the car struck him." there would still be a question for the jury as to whether the defendant was not negligent in driving her car so close to a pedestrian, who was in her direct vision, that the slightest movement of the pedestrian would bring him into contact with the car.

Reading the record in the light most favorable to the plaintiff, as we are required to do in considering the matter of a compulsory nonsuit, I believe that a question of fact was presented here for the consideration of a jury.