## Weshalek *v.* Weshalek, Appellant.

Argued September 28, 1955. Before Stern, C. J., Stearne, Jones, Musmanno and Arnold, JJ.

*J. Campbell Brandon,* with him *Hugh S. Millar,* and *Brandon, Millar, Rockenstein & MacFarlane,* for appellant.

*Samuel R. DiFrancesco,* with him *Kiester, Coulter & Gilchrist,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, November 17, 1955:

At the hour of 6:45 in the morning of July 25, 1953, a Packard automobile owned and operated by Mrs. Mildred Oravecz, and carrying six passengers, was proceeding eastwardly on Route 422, a three-lane highway, in the vicinity of Butler, Pennsylvania, when on the same highway a White trailer-truck, loaded with a twelve-ton cargo of wine and whiskey, followed by a huge Dodge convoy-carrier, was travelling westwardly. At a point about 3 miles west of Butler, the Dodge convoy-carrier moved from behind the White trailer-truck in order to pass it and, in doing so, entered into the center lane. While the convoy-carrier was still in the center lane and before it could complete the maneuver of passing the White trailer-truck, the Packard car appeared before it and the two vehicles collided head-on. The force of the impact pivoted the Packard and spun its rear end around into the path of the oncoming White trailer-truck which struck into it. In the instant the three vehicles intermeshed in calamitous violence and burst into flames, killing Mrs. Oravecz and two children, and seriously injuring five others.

Six suits were instituted for personal and property damages against the administrator of the estate of

Mildred Oravecz and the owner and driver of the Dodge convoy-carrier. The suits were consolidated for trial and a combined verdict of $11,572.86 was returned in favor of the plaintiffs. An appeal was taken to this Court which ordered a new trial (see 379 Pa. 544.)

At the second trial the jury returned a verdict in favor of the plaintiffs against the estate of Mildred Oravecz in the total sum of $19,459.99. The owner and driver of the Dodge convoy-carrier were exonerated of liability. Frank Weshalek, administrator d.b.n. of the Estate of Mildred Oravecz, moved for judgment n.o.v. in the Court below and, with the denial of that motion, appealed to this Court.

He here asks for a reversal of the lower Court's decision on the ground that the evidence did not establish sole or any negligence on the part of the deceased Mildred Oravecz. Particularly he urges that since no witness testified to actually seeing the collision between the Packard and the convoy-carrier, there is no direct proof as to what occurred in order to precisely affix liability. But this Court has often held that in the absence of eyewitnesses to a controverted event, negligence may speak through the physical facts. Events do not discourse only through the tongue of man. The twisted fragments of wrecked cars, the heavy, strained tire-marks in the dust and dirt of the road, and the position of lifeless bodies on the highway frequently tell the story of a tragic accident with more convincing realism than witnesses whose memory may have been affected by the shock and excitement of the violent event as well as by human frailties which often chip at the edge of faithful recollection and leave something less than impeccable truth.

In the case of *Tucker v. Pittsburgh Ry. Co.*, 227 Pa. 66, 69, this Court said: "Accidents in which life is lost not infrequently occur unwitnessed. Such fact in it-

self does not operate to protect one whose negligence can be shown from the general situation and circumstances to have been the operative cause. When these are such as to satisfy reasonable and well-balanced minds that the accident resulted from the negligence of the party charged, liability attaches."

In *Hines v. Fanti,* 374 Pa. 254, witnesses to the collision between two automobiles resulting in a fatality were also lacking, but we upheld a verdict which was based on circumstantial evidence: "Although it is true that there was no ocular evidence of the kiss of death between the two vehicles, the circumstances proved the nature of the fatal encounter as vividly as any human voice could describe. Immediately after the accident it was discovered that the Fanti truck bore collision marks at the very points where it would come into contact with the Hines truck in the attempt to pass it."

In the case of *Mitchell v. Stolze,* 375 Pa. 296, 298, the defendant complained that there could be no recovery since ocular evidence to describe, visualize, and reconstruct the details of the fatal accident involved was missing, but in affirming the verdict returned for the plaintiff this Court said of the defendant's contention: "Circumstantial evidence when it is planted squarely on the bedrock of natural laws, inevitable sequence and undeviating effect can be and is as convincing as the story of an eye witness. If circumstantial evidence can and often does persuade juries in criminal cases to render verdicts which deprive defendants of liberty and sometimes life, as indeed it can and does equally as effectively exonerate defendants accused of crime, why should it be regarded as any less reliable in civil cases? The worth of circumstantial evidence in civil cases is no longer a matter of academic debate or forensic argument."

It cannot be disputed that the Oravecz car was where it had no right to be at the time of the accident. Where a highway is limited to three lanes, the center lane is to be utilized for passing purposes if it is not already occupied by another car. The driver of the White trailer-truck testified that the convoy-carrier at his left was in the process of completing the overtaking and passing ("the back end of the trailer was practically almost pass me") when the Packard car appeared. Proceeding eastwardly, Mrs. Oravecz had the whole eastbound lane free for her forward course. One witness (C. C. Dick) testified that although an intervening car prevented him from seeing the actual impact he did have a clear view of the eastbound lane at the time: "Q. What part of the highway could you still see? A. The east bound traffic lane. Q. What was its condition? A. It was clear, to the top of the hill."

The definitive explanation for Mrs. Oravecz's presence in the center lane died with her. She may have moved there as the result of abstraction due to drowsiness or fatigue, she may have miscalculated the space on the road of travel, she may have lost control during a moment of restlessness or thoughtlessness, but whatever the cause for deviation from the proper path of travel, the consequences were catastrophic. It is for that reason that motorists are charged with the unintermittent duty of unflagging concentration at the wheel. A split second's mental wandering from the highway of responsibility can take one's life and those entrusted to his care over the precipice of disaster.

Reading the record in the light most advantageous to the plaintiffs, as we are required to do in view of the verdicts, we are satisfied that the facts entirely justified the conclusion reached by the jury; and the respective judgments entered in the individual lawsuits are, therefore, affirmed.