Paul KLINK, Administrator of the Estate of Mona McCauley, Deceased, Appellant,

v.

Nancy L. HARRISON.

No. 14458.

United States Court of Appeals Third Circuit.

Argued Nov. 19, 1963.

Decided May 18, 1964.

Paul E. Moses, Pittsburgh, Pa. (Robert B. Ivory, Evans, Ivory & Evans, Pittsburgh, Pa., on the brief), for appellant.

William C. Walker, Pittsburgh, Pa. (Dickie, McCamey, Chilcote & Robinson, Pittsburgh, Pa., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and GANEY, Circuit Judges.

GANEY, Circuit Judge.

This was an action to recover damages on behalf of the estate of the plaintiff's decedent under the Pennsylvania Survival Act, 20 P.S. § 320.603. There was no claim made under the Wrongful Death Act. The case was tried before a jury and resulted in a verdict for the defendant on which judgment was entered. A timely motion for new trial was filed and upon the opinion and order of the lower court denying the motion, the plaintiff filed this appeal.

Plaintiff's decedent was a twenty-year-old student nurse who was killed at 9:00 p. m. on November 20, 1959, as a result of a collision between two automobiles, a Pontiac driven by a young man named Smith and a Chevrolet owned and operated by the defendant, Nancy Harrison. The plaintiff's decedent was a passenger in the Pontiac car driven by Smith which was proceeding in a westwardly direction and the Chevrolet was proceeding uphill in an eastwardly direction on Leech Farm Road near its intersection with Lemington Avenue in Pittsburgh, Allegheny County. Leech Farm Road is a three-lane concrete highway running in an eastwardly and westwardly direction, its south side being intersected by Lemington Avenue. At or just east of the intersection, there was a curve to the left for eastbound traffic which, as stated, at that point, was proceeding upgrade and was the area where the accident happened.

The plaintiff's decedent had previously met Smith and they had gone out for the evening and he was proceeding to take her back to St. Francis Hospital where she was engaged in a special course of nursing and the defendant was enroute to visit a friend in the city of Pittsburgh when the accident happened.

It was stipulated by both counsel that the driver of the Pontiac car, Smith, and the driver of the Chevrolet, the defendant, Nancy Harrison, were both suffering from amnesia and that neither could remember the circumstances surrounding the happening of the accident. Despite this, however, the court charged the jury they were to determine as a fact whether there was any recollection of the occurrence of the accident by those involved. The defendant, Nancy Harrison, nevertheless, took the stand and testified that she had no recollection of the actual happening of the accident although immediately after the occurrence, when she was being brought to the hospital in an ambulance, one of the police officers who had arrived at the scene, Leo Marchetti, who was administering to her enroute, testified that she had told him " * * * that she was going up the hill and that she started to take the corner, sharp, and when she saw the car coming down she didn't have time to get back over on her own side of the road." The driver of the ambulance, Manella, also remembered some further conversation by her which he overheard wherein she inquired whether she could be taken to St. Francis Hospital because her father was on the staff and which request she repeated several times and that she inquired whether anyone was hurt and was struggling to sit up in the seat of her car. Both officers testified that all during the trip to the hospital she was conscious. Smith did not take the stand to testify, nor was his lengthy deposition taken by counsel for the plaintiff offered in evidence.

The testimony showed that when the police arrived on the scene the plaintiff's decedent was wedged in the front seat of the car with her head on the driver's seat and that Smith had been thrown through the door alongside the driver's seat clear of the car. The plaintiff's decedent was taken to the hospital where she died within two hours. The car in

which she had been riding which was driven by Smith was found to be on the south or wrong side of the road on which he had been traveling and gone up over a curb 6–8 inches high before coming to rest and was facing north-northeast. The defendant Nancy Harrison's car was in the immediate area near the intersection and it, likewise, was partly on the wrong side of the road and partly in the center lane thereof.

The plaintiff's decedent, Mona McCauley, had lived as a member of the household of Mr. and Mrs. Nelson Brubaker since 1950, and had been a student nurse at the Mercy Hospital in Altoona and was taking special work in psychiatry at St. Francis Hospital in Pittsburgh. Both Mr. and Mrs. Brubaker testified to her love of her home while she was living with them, though never adopted; that she was careful and thrifty and the possessor of good habits, neither drinking nor smoking, and was a girl of good character.

■ The first error alleged as ground for a new trial is the following portion of the court's charge to the jury: "Now, this action is brought by the administrator of Mona McCauley's estate, claiming damages on behalf of her estate from the defendant, Nancy Harrison. Now, in this connection there has been testimony by Mr. and Mrs. Brubaker, the persons with whom Mona McCauley lived. There is no testimony as to any legal relationship between Mona McCauley and the Brubakers which would give a proper basis for the bringing of this action on their behalf—that is, on behalf of the Brubakers, either by themselves or by the administrator of the estate." The court's reason for giving this instruction was that since the Brubakers gave testimony of her living with them for some 10 years, and that she was a bright and healthy young girl, one who was very thrifty and very much concerned with her home life with them, that this testimony concerning her upbringing might tend to create a "sympathetic but improbable inference" that the action was brought on behalf of the Brubakers and that their relationship with the decedent might be considered in assessing damages.

It is submitted that there was no error here, as all the court did was to properly enlighten the jury on the nature of the cause of action alleged by the party bringing it which, in no wise, detracted from the efficacy of the case which it presented. Though not adopted, the plaintiff's decedent had a very close relationship with the Brubakers and it was part of the plaintiff's case to show the necessary facts relating to her health and her future prospects, as related to the damages sustained by her estate, rather than by the Brubakers whom the jury, unless so told, might think were the parties entitled to recover damages. This instruction by the court did no more than clarify the position of the parties and point up the true relationship that obtained between them.

■ The next alleged error asserted by the appellant is the submission to the jury by the court of the question of whether or not the negligence of the driver, Smith, in whose car the plaintiff's decedent was a passenger, caused or contributed to the happening of the accident since, it is alleged, the record discloses no negligence on the part of Smith. This, in turn, is tied in with the further alleged error of the court in failing to charge that a presumption of due care existed with respect to Smith, the driver of the Pontiac car.

The portion of the court's charge, after defining negligence and the preponderance of the evidence with respect to the burden of proof, is as follows:

"If you do not find that the Plaintiff has established by a preponderance of the evidence that the Defendant was negligent and that negligence on the part of the Defendant was a proximate cause of the collision, either alone or jointly and concurrently of negligence of Thomas Smith, you need proceed no further, in such an event your verdict would be for the Defendant. In like

manner, *if you find by a preponderance of the evidence that the collision was caused solely by negligence on the part of Thomas Smith* and not by any negligence on the part of Nancy Harrison, your verdict would be for the Defendant. However, if you do find by a preponderance of the evidence that the Defendant, Nancy Harrison, was negligent and that her negligence was either the sole proximate cause of the collision or that it concurred with negligence of Thomas Smith as the proximate cause of the collision, in such event your verdict would be for the Plaintiff for the damages sustained by reason of the death of Mona Mc-Cauley." (Italics ours.)

It is submitted that this portion of the instruction to the jury concerning Smith's sole negligence was not alone unnecessary, but confusing, in that it placed in improper focus the sole negligence of Smith, when the negligence, or lack of it, on the part of the defendant, was the real focal point of the jury's inquiry.

What the court here said, is (1) that if the defendant is solely negligent—certainly then Smith could not be—or if the defendant is concurrently negligent with Smith, then Smith could not be either in this instance—defendant would be liable or, in other words, that the plaintiff could recover, and (2) if the defendant is not solely negligent nor concurrently so with Smith, the defendant is not liable and the plaintiff cannot recover. Here, as to (2), if the jury determines the defendant is not solely liable, while it may well be that Smith is solely negligent, this is of no concern to the parties to the cause of action because the jury has found no sole negligence on the defendant's part, which is what bars the plaintiff's recovery and not any possible sole negligence of Smith, and also, the finding that the defendant is not liable concurrently with Smith, dispenses with any sole negligence as to Smith and, of course, the verdict would be, in this instance, for the defendant. Accordingly,

the negligence, or lack of it, as to the defendant, precludes any necessity on the part of the jury to determine separately the sole negligence of Smith, as this, under the instructions adverted to, was resolved in the determination of defendant's negligence. It was, therefore, confusing to the determination of the issue before them, to give to the jury a separate and distinct instruction that if they found, by the "preponderance" of the evidence that Smith was solely negligent, plaintiff's decedent could not recover. This instruction has all the overtones of "burden of proof" and presupposes an additional action within the main suit imposing on the plaintiff not alone his proper burden of proving the defendant negligent, but, additionally, of proving by way of defense that the preponderance of evidence did not show Smith solely negligent. Accordingly, we deem this portion of the charge error. Nevertheless, in view of the balance of the court's instruction, we shall examine it further.

■ The only evidence in the entire record of any possible negligence on the part of Smith was the fact that Smith's car, after the accident, was found by the police on the wrong side of the road which he had been traveling and had gone up over a curb. Therefore, the only factual element in the record, in order to fit with the court's charge as to sole negligence on the part of Smith, would have to be that an inference of sole negligence would have to be drawn from this position of the car. However, the court never once referred to the position of Smith's car nor to the position of the defendant's car and never stated what, if any, inferences could be drawn from their respective positions after the accident. However, the court did refer to certain standards of care, required to be conformed to by the parties under the Motor Vehicle Code of Pennsylvania, in the following portion of its charge:

"Both parties contend that the driver of the other car was guilty of negligence because of a violation of the Motor Vehicle Code of Pennsylvania. The Motor Vehicle Code does

establish rules which constitute a standard of care in the operation of motor vehicles, any violations of which are negligence per se, or negligence as a matter of law. These rules may or may not be applicable to this case with respect to either or both of the drivers depending on your findings and your determination of the facts.

"The plaintiff contends that the Defendant was operating her automobile on the wrong side of the highway at the time of the collision. Similarly, the Defendant contends that the Smith automobile was being operated on the wrong side of the highway at the time of the collision. The Motor Vehicle Code provides that upon all highways of sufficient width, the driver of a vehicle shall drive his vehicle upon the right half of the highway and shall drive as closely as possible to the right hand edge or curve of the highway unless it is impossible to drive on such side of the highway.

"The Motor Vehicle Code also provides that drivers of vehicles proceeding in opposite directions shall pass each other to the right, each giving to the other at least one half of the main traveled portion of the highway.

"As I have said, you may consider these provisions of the Motor Vehicle Code as establishing standards of care in the operation of motor vehicles, which may or may not be applicable to this case, depending upon your determination of the facts.

"Thus, if you find any violation of either of these two provisions of the Motor Vehicle Code by one or the other of the two drivers of the automobiles, you may consider that as negligence on the part of the one or the other, or both, as you find the facts; and if you find that their actions—involved such violations— were proximate causes of the collision, then you would find that either or both of the drivers was guilty of

negligence which was the cause of the accident and the conditions as to liability would follow accordingly. Thus, if you should find that the Defendant, Nancy Harrison, at the time of this collision caused the collision by virtue of her having driven on the wrong side of the highway, you may find that this is negligence as a matter of law. If you find that Thomas Smith operates his vehicle on the wrong side of the highway, he would be guilty of negligence as a matter of law."

This broad general instruction was clearly insufficient in that it was not related nor made applicable to the facts of record upon which the jury could assess negligence on the part of Smith, if any, especially sole negligence, as we shall later see.

■ While there was evidence of the defendant driving on the wrong side of the road immediately previous to the accident which, in accordance with the charge of the court, would make her negligent, as a matter of law, the record is barren of any evidence on Smith's part of his violation of either of the two standards of care set out in the court's charge or, indeed, of any negligent act on his part excepting, possibly, the position of his car on the wrong side of the road after the accident. Therefore, it would seem impossible to determine whether Smith was negligent in driving on the wrong side of the road or the cause of the collision unless an inference thereof was drawn from the position of his car, as earlier adverted to. Accordingly, it was incumbent upon the court to tell the jury what inferences, if any, could be drawn from this circumstance, and, likewise, to do the same concerning the defendant's car which was partly on her wrong side of the road. This would have resulted in conflicting inferences whose weight would be for the jury's determination. Johnson v. Hetrick, 300 Pa. 225, 150 A. 477; Allen v. Kingston Coal Co., 212 Pa. 54, 56, 61 A. 572. However, the court, in its charge

to the jury, made no reference to inferences whatsoever.

■ While the operation of a motor vehicle on the wrong side of the road is prima facie evidence of negligence in Pennsylvania, Miles v. Meyers, 353 Pa. 316, 318, 45 A.2d 50, where there are no eyewitnesses to an accident and only circumstantial evidence is relied on to prove negligence, the position of a car on the wrong side of the road after an accident, unexplained by other oral testimony, does not show (1) that the driver was in the wrong lane of traffic at the moment of impact, nor (2) that the party was negligent. Satovich v. Lee, 385 Pa. 133, 122 A.2d 212. Many factors determine the position of cars after impact and there can be no determination of negligence merely from their position on the roadway alone. Streilein v. Vogel, 363 Pa. 379, 69 A.2d 97; Antonelli v. Tumolo, 390 Pa. 68, 132 A.2d 285.

■■ Nevertheless, the jury here had before it the direction the parties were going, that is, in opposite directions, photographs showing the curvature of the road, as well as the damage to both cars, the position of the cars after the accident and Marchetti's testimony. In view of this, we feel that in the totality of the circumstances here presented, the situation is more in conformity with Benner v. Weaver, 394 Pa. 503, 509, 510, 147 A.2d 388; Weshalek v. Weshalek, 383 Pa. 153, 118 A.2d 172; Hines v. Fanti, 374 Pa. 254, 97 A.2d 808; Mitchell v. Stolze, 375 Pa. 296, 100 A.2d 477; Wenham Transportation Co. Inc., v. Radio Construction Co., 190 Pa.Super. 504, 154 A.2d 301, where the court on somewhat similar circumstantial evidence permitted jury determination. Nevertheless, the jury should have been further told, that if they believed the circumstances referred to above to obtain, it was permissible to draw inferences of negligence, but as to Smith it was requisite for the court to elaborate further and to tell them that if they did so believe, and did draw an inference of negligence against him, they should go further and determine whether, in view of Marchetti's tes-

timony involving the admission of the defendant, it might or might not be an explanation of the cause of the accident and, accordingly, the position of his car afterwards, which might eradicate any inference of negligence as to him. It would seem such testimony was a sufficient explanation of the position of his car, but whether it was or not, it was certainly a matter for the jury to determine and yet the court made no reference thereto in its charge. Where one finds himself in a position of danger which is not the result of his negligence, he is not responsible if he made a mistake of judgment in getting out, as an honest exercise of judgment is all that is required of him even if he might have done better had he time to deliberate. Community Fire Company v. Pennsylvania Power & Light Co., 92 Pa.Super. 304, 309. Benner v. Weaver, supra is to the same effect, stating that "When a driver is on the wrong side of his road, there follows an ipso facto presumption of negligence against him, unless he can satisfactorily explain why he would be where maximum peril resides for himself and all those who legitimately are pursuing their course on their own side of the road." Baker v. North East Borough, 151 Pa. 234, 24 A. 1079; Cannon v. Pittsburgh & Birmingham Traction Co., 194 Pa. 159, 44 A. 1089; Hookey v. Oakdale Borough, 5 Pa.Super. 404.

■ This elaboration was of vital importance to the plaintiff's decedent, and especially that portion of the charge referring to sole negligence on the part of Smith, and we hold, in view of the above, there was error here also since there is a presumption that a verdict is rendered in accordance with the instruction of the trial judge. Milanovich v. Rochez Brothers, 379 Pa. 264, 108 A. 687.

It is submitted that the above authorities are concerned with the drawing of inferences of drivers of a car wherein the drivers are parties to the cause of action, but, in view of the dearth of Pennsylvania authorities as to one not a party, we feel in the given circumstances, that the same principle is applicable.

226

Since the case is to be remanded for a new trial, it would seem proper that, in view thereof, the court should correct what it deems fundamental error in its charge, even though acquiesced in by the appellant.

The court here, in discussing whether or not the appellant had met its burden of proof by the fair preponderance of the evidence and, in turn, its being the proximate cause of the accident, charged the jury as follows:

"In considering the negligence of the Defendant, Nancy Harrison, you may consider what is known as a rebuttable presumption. When the mind of a person involved in an accident is blank as to the accident and all its incidents and has no recollection of the accident, it is presumed that he did all that the law required him to do *and is not guilty of negligence.* As I have said, this presumption is a rebuttable one and may be overcome by evidence to the contrary. In this case evidence has been introduced for the purpose of rebutting this presumption. The sufficiency of that evidence is for you to determine; and I have specific reference to the admissions in the ambulance that were testified to by one of the policemen in this case. *Was the evidence sufficient to overcome the rebuttable presumption that there was no negligence?* It is a matter of fact for you to determine. Consider the condition in which the person was who made the statement and all of the facts and circumstances, not only in this respect but pertaining to the accident as a whole in determining *whether or not the rebuttable presumption of freedom from negligence has been overcome.* * * * " (Italics ours.)

By way of preface, it must be said that the law relating to the subject of presumptions, their scope and effect, has given rise to complexities and subtleties expressed in varying theories by legal scholars, as well as erudite judges, and the confusion of thought manifest in its treatment has evoked the characterization that the law is " * * * 'a welter of loose language and discordant decisions.' " [1] Accordingly, it is necessary on the record here presented to determine the true nature of a presumption and, more particularly, that of the presumption of due care and what force and effect the courts of Pennsylvania have given to it.

The late distinguished scholar, Dean Thayer, of the Harvard Law School, in his treatment of the Law of Evidence, 313, 339, states: "The essential character of presumptions, so far as the law of evidence is concerned, is in all cases the same, whether they be called by one name or the other, that is to say, they throw upon the party against whom they work, the duty of going forward with the evidence; and the operation is all their effect, regarded merely in their character of presumptions." Likewise, 9 Wigmore on Evidence, (3rd Ed.), § 2491, states as follows: " * * * it must be kept in mind that the peculiar effect of a presumption 'of law' (that is, the real presumption) is merely to invoke a rule of law compelling the jury to reach a conclusion *in the absence of evidence to the contrary* from the opponent. If the opponent *does* offer evidence to the contrary (sufficient to satisfy the judge's requirement of some evidence), the presumption disappears as a rule of law, and the case is in the jury's hand free from any rule." It is suggested that the difficulties the subject engenders are not to be found so much in the significance of the term "presumption" but rather in the diverse theories regarding the effect given it and the loose language used by legal writers, though not all.[2]

1. Tyrrell v. Prudential Insurance Company of America, (1937), 109 Vt. 6, 192 A. 184, 115 A.L.R. 392.

2. See The Presumption of Due Care—An Analysis, 20 Pa.Bar Assn.Q. 24 (1948), by Robert M. Bernstein, a member of the Philadelphia Bar. See also The Presumption of Due Care in Pennsylvania (A Reply), 31 Pa.Bar Assn.Q. 21 (1959), by the same author. See also F. Brewster Wickersham and Chistian D. Erb, Jr., March Pa.Bar Assn.Q. 1959.

The Thayer-Wigmore doctrine has been adopted in most jurisdictions in this country, but Pennsylvania had never been numbered among them until belatedly when certain language in two cases might seem to more or less point in that direction. Waugh v. Commonwealth, 394 Pa. 166, 173–174, 146 A.2d 297; Waters v. New Amsterdam Casualty Co., 393 Pa. 247, 251–252, 144 A.2d 354.

In Pennsylvania, as will be indicated, the courts, for a long time, have given probate effect and evidentiary value to certain presumptions and, in many instances, the doctrine still persists and the cases by no means show uniformity, yet with respect to that of due care, presently, it has been effectively repudiated.

The presumption in Pennsylvania has a long history. As early as 1864, in Philadelphia & Trenton R. R. Co. v. Hagan, 47 Pa. 244, the trial court said: "If the whistle of the engine was not sounded nor any other usual notice given of the approach of the train, the decedent had a right to presume that the track was clear, and unless the jury is satisfied by affirmative proof that the decedent did *not* use ordinary care, the defendants are liable to the consequence of his injury." Then came Allen v. Willard, 57 Pa. 374, wherein the court stated: "The natural instinct which leads men in their sober senses to avoid injury and preserve life, is an element of evidence." Later, in Weiss v. Pennsylvania R. R., 79 Pa. 387, the Supreme Court said: "The presumption of law was that he had done all that a prudent man would do under the circumstances to preserve his own life, and that he had stopped and looked and listened * * * the onus of proof of contributory negligence was thus clearly cast upon the defendants." The language of this case has been repeated in many later cases. Pennsylvania R. R. v. Werner, 89 Pa. 59; Longenecker v. Pennsylvania R. R., 105 Pa. 328. As the subject kept recurring, the courts more and more encrusted on the presumption of due care the attribute of evidentiary value. As, for example, the court states

in Holzheimer v. Lit Bros., 262 Pa. 150, 152, 105 A. 73, 74, "As a presumption it was of course rebuttable, but this does not mean that it had any less probative force than it would have had had it rested on direct evidence." To the same effect is Ford v. A. E. Dick Co., 288 Pa. 140, 147, 135 A. 903. Likewise, in Gojkovic v. Wageley, 278 Pa. 488, 490, 123 A. 466, 467, the court stated: " * * * that a rebuttable presumption of liability has the same probative force as if established by direct evidence, and it is for the jury to pass upon the credibility of witnesses offered to repel such presumption." Hartig v. American Ice Co., et al., 290 Pa. 21, 137 A. 867, is to the same effect, citing the above two cases. Likewise, in Hepler, Admx. v. Hammond, 363 Pa. 355, 359, 69 A.2d 95, 97, the court also states: "The presumption was that the plaintiff's husband exercised the required care; no evidence in plaintiff's case displaced the presumption. When plaintiff rested, a fact in the case was that decedent had used due care; the defendant then had the burden of showing that the fact was otherwise, the burden of showing contributory negligence, a defense to the suit."

However, the beginning of an opposite trend by the Supreme Court of Pennsylvania, though seemingly in conflict with decisions at the time and some later, had set in starting with Watkins v. Prudential Insurance Company, 315 Pa. 497, where, at page 504, 173 A. 644, at page 648, 95 A.L.R. 869. Chief Justice Maxey stated: "Presumptions are not fact suppliers; they are guideposts indicating whence proof must come." In the opinion, he quotes from Wigmore on Evidence, (2nd Ed.), Vol. 5, § 2491, stating, "No presumption can be evidence; it is a rule about the duty of producing evidence." and follows this with the flat statement that "Presumptions are always independent of evidence." Quoted with approval is Mackowik v. Kansas City, St. J. & C. B. R. Co., 196 Mo. 550, 94 S.W. 256, as follows: "[P]resumptions may be looked upon as legally recognized phan-

toms of logic, flitting in the twilight, but disappearing in the sunshine of actual facts."

A comparable situation, with respect to presumptions, obtained in Vermont, and a landmark in the jurisprudence of that state is Tyrrell v. Prudential Insurance Company of America (1937), 109 Vt. 6, 192 A. 184, 115 A.L.R. 392, where the court reversed its previous trend of decisions that evidentiary value could be attributed to a presumption, and, at page 192 of 192 A., it is stated: "A presumption, of itself alone, contributed no evidence and has no probative quality. It takes the place of evidence, temporarily, at least, but if and when enough rebutting evidence is admitted to make a question for the jury on the fact involved, the presumption disappears and goes for naught. In such a case, the presumption does not have to be overcome by evidence; once it is confronted by evidence of the character referred to, it immediately quits the arena." In this instance, the presumption was, that death is presumed from a disappearance of seven years or more.

It is to be borne in mind, however, that all presumptions are not alike, some arising from economic considerations, others springing from traditional agreements as to sound public policy, and others from the instinct of self-preservation, such as the one we are here considering, and, accordingly, they give rise to different considerations. For example, Waugh v. Commonwealth, supra, which concerns the presumption of permissive use, and Waters v. New Amsterdam Casualty Co., supra, which concerns the allowance of six per cent interest on a claim in the absence of evidence to the contrary, are both instances which enabled the plaintiff to get to the jury and shift the burden of going forward to the defendant to prove to the contrary and if no evidence is offered the issue is decided in favor of the plaintiff as a matter of law.

■ However, a quite different effect results from the presumption of due care. This presumption has nothing whatever to do with the plaintiff getting to the jury. Pennsylvania is now firmly committed to the doctrine that the presumption of due care in and of itself has no evidentiary value or probative effect. The plaintiff gets to the jury solely on the evidence it brings of the defendant's negligence: Duda, Admrx. v. Carothers, 379 Pa. 248, 250, 108 A.2d 791; Lear v. Shirk's Motor Express Corp., 397 Pa. 144, 149, 152 A.2d 883; Lennig v. New York Life Insurance Co., 3 Cir., 122 F.2d 871; Johnstone v. Reading Co., 248 F.2d 71, 74 (3rd Cir. 1957). Likewise, in Fonzone v. Lehigh Valley Transit Co., 318 Pa. 514, 516, 178 A. 671, 672, the court states: "Plaintiff cannot be relieved of the burden of proof she assumed by invoking any presumption.", citing Watkins v. Prudential Insurance Co., supra. It is therefore now clear that the presumption of due care has no probative effect and adds no weight to the burden of the plaintiff in proving defendant negligent by the preponderance of the evidence, and, on the other hand, it does not detract anything from that burden.

■ The true nature of a presumption of due care in Pennsylvania is clearly stated in Moore v. Esso Standard Oil Co., 364 Pa. 343, 345, 72 A.2d 117, 120, wherein it is stated: "One thing is clear and that is that the presumption of due care does not prove the defendant negligent; nor does the presumption take the case to the jury, without real proof of the defendant's negligence. The presumption has no significance, until plaintiff has made out a prima facie case of defendant's negligence. When the plaintiff has made out a case of the defendant's negligence and the defendant has come forward with his case, on the question of plaintiff's contributory negligence, the jury, in evaluating all of the evidence, have the right to consider and bear in mind that there is, in every man, an instinct of self-preservation which is ordinarily reflected in the exercise of due care and in the avoidance of danger."

■ It may well be that future decisions of the courts of Pennsylvania, as to some presumptions, will tend to

come full cycle to the Thayer-Wigmore doctrine that when a presumption is met with some evidence, it quits the arena and the case is then tried on the basic facts submitted by the plaintiff and the defendant. However, with respect to the doctrine of due care, the courts have taken the solid position that it is not evidence, nor has it any probative effect and it will not, in and of itself, take the case to the jury and that it does not shift the burden of contributory negligence to the defendant, as he has always had that burden in Pennsylvania. Hepler, Admrx., v. Hammond, supra, 363 Pa. at p. 356, 69 A.2d 95. While, under the law of Pennsylvania, the defendant here is entitled to the presumption of due care, since it has been held that one suffering from amnesia has the same status as though dead, Heaps v. Southern Traction Co., 276 Pa. 551, 553, 120 A. 548; Auel v. White, 389 Pa. 208, 132 A.2d 350, nevertheless, it is of no different kind or value than that which may be accorded any plaintiff under Pennsylvania law and, accordingly, as we have seen, it can have no probative effect or evidentiary value as to the defendant here. It is not evidence of non-negligence on the part of the defendant, any more than it could be treated in a plaintiff's case as evidence of negligence, and the court was in error in instructing the jury to determine, "Was the evidence sufficient to overcome the rebuttable presumption that there was no negligence?". Such an instruction plainly, and the import of the balance thereof to a somewhat lesser degree, gives evidentiary value to the presumption which, in and of itself, has no such content as the present state of law in Pennsylvania establishes.

 Finally, in view of the purpose which the Pennsylvania courts attribute to the presumption of due care, it renders impossible in our opinion, the application of the doctrine to Smith, a non-party, under the facts existing here. In this view, the operative function of the presumption comes into play, only between parties to a cause of action, after both sides have presented their case and, as stated above, Moore v. Esso Standard Oil Co., supra, its only objective is to evaluate evidence in light of the considerations of self-preservation, as well as the natural instinct to avoid danger.

 While there is a notable absence of authority in the Pennsylvania cases, on the application of the presumption to non-parties, we assert the judgment that a Pennsylvania court would, under like circumstances, refuse to accord Smith the presumption.

In this most unique situation where the lips of all parties to the happening are sealed, with no eyewitnesses to testify to the occurrence, the wall of silence can only be breached, to determine on whom liability attaches, by carefully setting out the rules of law applicable to the factual situation obtaining, since only an intelligently informed jury could, under these circumstances, reach a just and proper result.

The judgment of the lower court will be reversed and the case will be remanded for a new trial in accordance with this opinion.

KALODNER, Circuit Judge (concurring in part and dissenting in part).

I agree that the judgment of the District Court must be reversed and the cause remanded for a new trial.

I disagree with the majority's holding that "a Pennsylvania court would, under like circumstances, refuse to accord Smith the presumption" of due care.

In my opinion the Pennsylvania courts would hold that it was prejudicial error to fail to charge the jury that Smith was entitled to the presumption of due care.